[Cite as *State v. Jackson*, 2017-Ohio-278.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

TRAVASKI T. JACKSON

    Appellant

C.A. No.     27739

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2013 11 3167 (B)

DECISION AND JOURNAL ENTRY

Dated: January 25, 2017

CARR, Presiding Judge.

{¶1} Appellant, Travaski Jackson, appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} A.S. spent the evening of November 7, 2013, with his brother A.K., a few other acquaintances, and two women. People came and went as the evening wore on, eventually leaving A.S. and A.K. alone with the two women. While A.K. and the older of the two women were upstairs, A.S. fell asleep on the living room couch in the presence of the younger woman. He awoke to find two armed men wearing black masks standing over him. The men forced him upstairs at gunpoint, where one of the two entered the bedroom and shot A.K. The men forced A.S. back downstairs, with the man behind him holding a gun to his head. As A.S. pleaded for his life, one of the men shot him in the head at close range. Police recovered personal items belonging to both A.S. and A.K. in a box that they found in a basement room rented by Jackson,

who was identified by other participants in the crimes. When interviewed by the police one day after the crimes, Jackson admitted that he had been present.

{¶3} A grand jury indicted Jackson for aggravated murder in violation of R.C. 2903.01(B), accompanied by a firearm specification; murder in violation of R.C. 2903.02(B); attempted murder in violation of R.C. 2903.02(A) and R.C. 2923.02, accompanied by a firearm specification; aggravated burglary in violation of R.C. 2911.11(A)(1), accompanied by a firearm specification; aggravated robbery in violation of R.C. 2911.01, accompanied by a firearm specification; kidnapping in violation of R.C. 2905.01(A)(3); felonious assault in violation of R.C. 2903.11(A)(1); tampering with evidence in violation of R.C. 2921.12(A)(1); and having weapons while under disability in violation of R.C. 2923.13(A)(2). Six of the charges were accompanied by firearm specifications under R.C. 2941.145.

{¶4} A jury found Jackson guilty of each charge except aggravated murder, but found itself deadlocked on that charge. The trial court dismissed that charge on the State's motion, merged Jackson's convictions for attempted murder and felonious assault, and merged several of the firearm specifications. The trial court sentenced him to life in prison on the murder charge with parole eligibility after 15 years, to be served consecutively with total prison terms of ten years for the remaining convictions and six years for the remaining firearm specifications. Jackson filed this appeal. His seven assignments of error are rearranged for ease of discussion.

II.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A P[ER]EMPTORY CHALLENGE IN A [RACIALLY] DISCRIMINATORY FASHION THEREBY DENYING MR. JACKSON EQUAL PROTECTION UNDER THE LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

**{¶5}** Jackson's fifth assignment of error is that the trial court erred by permitting the State to exercise a peremptory challenge against Juror Number 20, an African American male. We disagree.

**{¶6}** Prospective jurors cannot be stricken for discriminatory purposes, and claims of discriminatory use of a peremptory challenge are considered under a three-step analysis. *Foster v. Chatman*, ___ U.S. ___, 136 S.Ct. 1737, 1747 (2016), citing *Batson v. Kentucky*, 476 U.S. 79 (1986). In the first step, a defendant must make a prima facie showing that the state has exercised a peremptory challenge on the basis of race. *Id.*, quoting *Snyder v. Louisiana*, 552 U.S. 472, 476-477. Once the prima facie showing has been made, the State must offer a basis for striking the prospective juror that is race-neutral. *Id.* Finally, the trial court must consider the parties' positions to determine whether the defendant has demonstrated purposeful discrimination. *Id.* When a trial court finds that discriminatory intent has not been demonstrated, that conclusion will only be reversed on appeal upon a demonstration that the trial court's decision is clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992), following *Hernandez v. New York*, 500 U.S. 352 (1991). This standard of review does not require us to defer to a trial court's findings, but does require "a clear error" – and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez*, 500 U.S. at 369.

**{¶7}** In this case, the State expressed concern with Juror Number 20 not because of his responses during voir dire, but because he appeared to have difficulty communicating. During the subsequent voir dire of Juror Number 20 during a sidebar, he informed the trial court that he had recently suffered a heart attack and that his speech was impaired. The juror acknowledged that he got nervous when speaking and that it would take him time to express himself. He also

explained that he felt that he could make his opinion known in the context of jury deliberations. During the trial court's inquiry regarding the State's peremptory challenge, the State expressed a race-neutral justification:

> Your Honor, during the Court's questioning in additional voir dire, and also at sidebar, [Juror Number 20] appears to be physically challenged. He seems to smile inappropriately, and without embarrassing him I did not want to ask him if he has mental health issues.
>
> He is difficult to understand. He is slow to answer questions, I thought. Like I told the Court, I just had trouble understanding him. I think it's going to be problematic on this jury. I think they're going to walk all over him.
>
> * * *
>
> And I guess, further, he indicated he had a heart attack, and I'm no doctor, but I've known many people to have heart attacks and also known people with strokes. He seems to be not exhibiting - - his speech would be more from a stroke than heart attack. I'm wondering if the heart attack has nothing to do with his demeanor, his verbal responses. I'm not sure; I can't figure it out.

Jackson, who represented himself during voir dire, responded that the juror had maintained his employment for 13-14 years and had articulated himself during voir dire. The trial court concluded that the State had articulated a race-neutral justification for the peremptory challenge and noted that he shared the State's concern in some respects. Noting that the State's position was not sufficient to rise to the level of an excusal for cause, the trial court concluded that it was a sufficiently race-neutral reason to permit the peremptory challenge and overruled Jackson's *Batson* challenge.

{¶8} There is no clear error in the trial court's determination. In this respect, we note that there is no pattern of excusing African American jurors from the venire apparent in the record. In addition, the State did not express similar concerns about any nonminority jurors who were permitted to serve, so there is no indication of disparate treatment. *See*, *e.g.*, *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, ¶ 30, citing *Miller-El v. Dretke*, 545 U.S. 231,

241 (2005). At most, the record reflects that Jackson and the State evaluated the suitability of Juror Number 20 differently, but this does not lead to the conclusion that the State's rationale was pretext.

{¶9}    Jackson's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ALLOWING THE VICTIM TO TESTIFY ON DIRECT THAT HE IDENTIFIED [JACKSON] AS THE PERSON WHO HELD A GUN TO HIS HEAD AT THE CRIME BY IDENTIFYING MR. JACKSON'S VOICE WHEN SUCH INFORMATION HAD NEVER BEEN PROVIDED TO THE DEFENSE BEFORE THE TESTIMONY AT TRIAL DESPITE BEING IN THE PROSECUTOR'S POSSESSION DUE TO HAVING BEEN TOLD THIS BY THE VICTIM.

{¶10}   Jackson's first assignment of error argues that the trial court erred by allowing the State to elicit the testimony of A.S. that he recognized the voice of one of the perpetrators as Jackson. Specifically, Jackson maintains that the State was in possession of that evidence, but failed to provide it to the defense during discovery.

{¶11}   Crim.R. 16(B) provides that upon receipt of a written discovery demand, the State must provide copies or permit inspection of items  listed in the Rule that are material to the preparation of the defense, intended for use by the State as evidence at trial, or obtained from or belonging to the defendant. Although Crim.R. 16(B)(7) requires the production of "[a]ny written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal," the Rule does not require the State to reduce interviews with potential witnesses to written form. *See State v. Inman*, 4th Dist. Hocking No. 12CA16, 2013-Ohio-3351, ¶ 25-27.

{¶12}   Assuming, without deciding, that Crim.R. 16(B) applied to the unwritten statement that A.S. made to the State, we must overrule this assignment of error for a basic

reason. A trial court is authorized by Crim.R. 16(L) to remedy noncompliance with the Rule by permitting discovery or inspection, granting a continuance, prohibiting the introduction of undisclosed material, or making any other order that is just under the circumstances. In this case, Jackson objected to A.S.'s statement, but did not request a continuance. The trial court ordered a recess, during which the State confirmed that Jackson and A.S. had been in Oriana House together for a four-day period in 2013. Once the trial court had that information, the defense agreed that the direct examination of A.S. should be reopened to permit additional questions regarding the voice identification with the opportunity for aggressive cross-examination. When the State questioned A.S. further, the defense did not object.

{¶13} Given this sequence of events, in its totality, the trial court did not abuse its discretion by allowing further investigation into the circumstances and, ultimately, allowing A.S. to testify regarding the voice identification. Jackson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE. THE STATE OF OHIO FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHEN VIEWED BY THE MANIFEST WEIGHT OF THE EVIDENCE THAT [JACKSON] WAS INVOLVED IN THE MURDER, ATTEMPTED MURDER, OR FELONIOUS ASSAULT BECAUSE [JACKSON] TERMINATED HIS INVOLVEMENT AS A COMPLICITOR AND [RENOUNCED] HIS ACTION IN THE MURDER. THE COURT ERRED, THEREFORE, IN FAILING TO GRANT [JACKSON'S] RULE 29 MOTION FOR ACQUITTAL.

{¶14} Jackson's third assignment of error references the sufficiency and manifest weight of the evidence interchangeably, but the substance of his assignment of error is that his convictions for murder, attempted murder, and felonious assault are against the manifest weight of the evidence because Jackson abandoned his participation in the crimes. We disagree.

**{¶15}** When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶16}** "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, ¶ 21, citing R.C. 2923.03(F). Complicity is established when a person acts with the level of culpability required for an offense in soliciting or procuring another to commit the offense, aiding or abetting in the commission of the offense, conspiring to commit the offense, or causing an innocent or irresponsible individual to commit the offense. R.C. 2923.03(A). Termination of complicity is an affirmative defense, but the circumstances must "manifest[] a complete and voluntary renunciation of * * * criminal purpose" before the commission or attempted commission of the offense. R.C. 2923.03(E). When a defendant asserts an affirmative defense, "[t]he burden of going forward with the evidence * * *, and the burden of proof, by a preponderance of the evidence * * *, is upon the accused." R.C. 2901.05(A).

**{¶17}** A.S. testified that he woke up on the couch at his brother's house to find two masked gunmen standing over him. He recalled that they walked him upstairs, with one gunman in front and one behind, and that the gunman behind him held a gun at his head during the entire

course of events. A.S. identified the "distinctive" voice of the gunman behind him as man with whom he had served some time in Oriana House, whose voice he had "distinctively" heard on many occasions. He testified that he knew the man by nickname and by face, and he identified Jackson in court as that individual.

{¶18} A.S. recalled that after the other gunman shot A.K. in the upstairs bedroom, both gunmen forced him back down the stairs at gunpoint. He recalled that the first gunman urged Jackson to "Hurry up and do yours" while Jackson held him at gunpoint. A.S. testified that he pleaded for his life, offering Jackson money, his phone, and to drive him elsewhere to rob someone different. Just before he was shot in the head, A.S. recalled that Jackson said, "I like you, man. You cooperated with us. I'm going to let you go. I just want you to lay on the blow-up mattress, and face flat[.]" A.S. testified that he "instinctively" knew that he was going to be shot following Jackson's words, so he raised his hands toward his head immediately before the shot was fired.

{¶19} J.J., who was convicted as an accomplice in the crimes, testified that Jackson was involved in the incident from beginning to end. She recalled that Jackson contacted her on the evening of November 7th and picked her up in a vehicle in which another man and woman were already passengers. J.J. testified that the younger woman, A.M., discussed their plan for A.M. and J.J. to have sex with two men to distract them until Jackson and Dashaun Spear, Jackson's codefendant, entered to commit a robbery. J.J. recalled that A.M. could not reach the potential victim by phone, so Jackson drove them to A.K.'s residence instead. Later in the evening, according to J.J., A.M. proposed that they rob A.K. instead, but with the caveat that "if you rob him, you got to kill him[.]" J.J. identified Spear as the man who shot A.K. and Jackson as the man who held a gun to A.S.'s head. She testified that after A.S. was shot, Jackson drove them

back to a basement apartment that appeared to belong to him, where they divided the money from the robbery. The leaseholder of the residence in which police found personal items that belonged to A.K. and A.S. confirmed that Jackson rented a basement room from her.

{¶20} Jackson argues that his words to A.S. immediately before A.S. was shot demonstrate his intention to renounce his participation in the shooting. This argument is not persuasive. The evidence at trial demonstrates Jackson's involvement from beginning to end of the events. According to the witnesses who testified, Jackson did not leave the scene or express unwillingness to participate in any way – to the contrary, he drove the four participants to his rented room, participated in the division of the money from the robbery, and kept the victims' personal items in his possession. Notably, Jackson's words themselves do not necessarily lend credibility to the position that he renounced participation in the crimes: according to A.S., Jackson's words immediately before the shooting left him with the instinctive sense that he faced danger.

{¶21} Having reviewed all of the testimony at trial and considered the credibility of all of the witnesses, we cannot conclude that this is the exceptional case in which the evidence at trial weighs heavily against the conviction. Jackson's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE COURT ERRED IN NOT GIVING A TERMINATION AND RENUNCIATION INSTRUCTION AND IN SO DOING, COMMITTED PLAIN ERROR.

{¶22} In his fourth assignment of error, Jackson argues that the trial court committed plain error by failing to instruct the jury about a defendant's renunciation of criminal purpose for purposes of complicity. We disagree.

{¶23} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, ¶ 5, and *State v. Lessin*, 67 Ohio St.3d 487, 493 (1993). A jury instruction regarding an affirmative defense is only required when the defendant has produced sufficient evidence to raise a question in the minds of reasonable jurors about the existence of the affirmative defense. *See State v. Reed*, 9th Dist. Summit No. 27755, 2016-Ohio-5123, ¶ 15, quoting *State v. Hatfield*, 9th Dist. Summit No. 23716, 2008–Ohio–2431, ¶ 8. "If the evidence generates only a mere speculation or possible doubt * * * submission of the issue to the jury will be unwarranted." *State v. Getsy*, 84 Ohio St.3d 180, 198-199 (1998).

{¶24} Because Jackson did not object to the jury instructions, our review is limited to plain error:

> By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. Third, the error must have affected * * * the outcome of the trial.

*State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶25} In support of his position that the trial court erred by not instructing the jury about renunciation of criminal purpose, Jackson points only to A.S.'s recollection that the gunman later

identified as Jackson said, "I like you, man. You cooperated with us. I'm going to let you go. I just want you to lay on the blow-up mattress, and face flat[.]" As indicated in our discussion of Jackson's third assignment of error, however, the context of this statement belies Jackson's argument. J.J.'s testimony demonstrated that Jackson was involved in the incident from the planning stage through the commission of the offenses and the division of the stolen property. No evidence indicates that Jackson actually renounced his participation and, to the contrary, A.S. perceived his statements not as a sincere desire to release him unharmed, but as an indication that he was in imminent danger. The evidence in this case is not sufficient to raise a question in the minds of reasonable jurors about whether Jackson renounced his criminal purpose, and as such, the evidence did not require the trial court to instruct the jury about renunciation. Because "error * * * [is] the starting point for a plain-error inquiry," we overrule Jackson's fourth assignment of error on that basis. *See State v. Hill*, 92 Ohio St.3d 191, 200 (2001).

**{¶26}** Jackson's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE COURT ERRED IN NOT ALLOWING THE PRESENTATION OF [JACKSON'S] WITNESSES AND IN ITS FINDING THAT THEY WERE OFFERED TO PROVIDE EXTRINSIC EVIDENCE OF A COLLATERAL MATTER[.]

**{¶27}** Jackson's second assignment of error is that the trial court erred when it excluded the testimony of three potential witnesses under Evid.R. 616(C). Specifically, Jackson argues that their testimony was not offered merely as collateral evidence to impeach the testimony of J.J., one of the women implicated in the crimes, but was relevant to establish the timeline of events on the night in question. We disagree.

**{¶28}** "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion

that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

{¶29} Jackson proffered the testimony of three witnesses. According to the proffer, each would have testified that they saw Jackson before 11:30 p.m. on the evening before the offenses. One of the co-defendants who testified at trial, J.J., testified that she received a call from Jackson on the evening of the offenses. She could not remember when she received the call, but did testify that it was dark outside. She also testified that Jackson dropped her and a younger woman off at A.K.'s house later in the evening. She did not know what time he dropped her off, but did recall that it was, again, dark.

{¶30} Testimony that potential witnesses saw Jackson before 11:30 p.m. does not provide an alibi to the offenses within the meaning of Crim.R. 12.1. The evidence established that the crimes were committed around 4:00 a.m., and ample testimony, including his own initial statement to police, established that Jackson was present at the scene. Even assuming, without deciding, that the trial court abused its discretion by excluding the testimony of Jackson's three witnesses, he has not demonstrated that he suffered material prejudice as a result. His second assignment of error is overruled on that basis.

### ASSIGNMENT OF ERROR VI

THE COURT ERRED IN NOT ALLOWING THE DEFENSE TO REOPEN ITS CASE SO DEFENDANT JACKSON COULD TESTIFY.

{¶31} Jackson's sixth assignment of error is that the trial court erred by denying his motion to reopen the defense case so that he could testify.

{¶32} An appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on

which appellant relies." App.R. 16(A)(7). When an appellant relies solely on a recitation of the facts without any legal argument, we may disregard an assignment of error. *In re C.R.*, 9th Dist. Summit Nos. 25211, 25223, 25225, 2010-Ohio-2737, ¶ 43. Indeed, it is inappropriate for this Court to construct an argument on an appellant's behalf in that situation. *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 13.

{¶33} In this case, Jackson's assignment of error asserts that the trial court erred by refusing to reopen the defense case so that Jackson could testify, his previous unequivocal waiver of that right notwithstanding. Jackson asserts that the standard of review is an abuse of discretion, but then provides no argument other than a recitation of his version of the facts. Significantly, Jackson has not provided any legal framework through which this Court can identify the precise legal error that he has raised. In these circumstances, this Court cannot construct a legal argument on Jackson's behalf. His sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

THE COURT ERRED IN DENYING ADMISSION OF DEFENDANT'S EXHIBIT "A".

{¶34} Jackson's seventh assignment of error is that the trial court abused its discretion by refusing to admit into evidence a letter written by J.J. to the judge who presided over Jackson's trial. Specifically, Jackson maintains that the letter was admissible as extrinsic evidence of bias under Evid.R. 616(A). We disagree.

{¶35} Evid.R. 616(A) provides that bias may be demonstrated for purposes of impeachment through examination or through the introduction of extrinsic evidence. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. *See also State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 105.

{¶36} We cannot conclude that the trial court abused its discretion in this case. During her cross-examination, J.J. acknowledged that she had written a letter to the trial judge in which she stated that she did not want to testify unless her prison sentence was reduced. Although that letter was not admitted into evidence, J.J. was vigorously examined and cross-examined about its contents and her potential bias. She stated that she hoped that her sentence could be reduced, but that did not motivate her to testify. She denied that the State had given her any indication that her sentence could be reduced and, in fact, stated that she had been told unequivocally that her current sentence was the best deal that she could get. She testified that as a result of the letter, she had been granted a hearing to consider whether she should be allowed to withdraw her guilty plea, after which the trial court denied her request. According to J.J., she testified "for [A.K.'s] mother. * * * If it was not for her, I wouldn't be here."

{¶37} J.J.'s extensive testimony regarding the contents of and context for the letter provided ample evidence of any potential bias under Evid.R. 616(A), and we cannot conclude that the trial court erred under these circumstances by refusing to admit the letter itself into evidence. Jackson's seventh assignment of error is overruled.

### III.

{¶38} Jackson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.