[Cite as *State v. Bardos*, 2016-Ohio-8091.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 15CA0082-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID M. BARDOS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14CR0801 |

DECISION AND JOURNAL ENTRY

Dated: December 12, 2016

CARR, Presiding Judge.

{¶1} Appellant, David Bardos, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a bizarre sequence of events that occurred on the evening of October 25, 2014. Several weeks later, the Medina County Grand Jury indicted Bardos on one count of violating a protection order. Because Bardos had been convicted of violating the protection order on two prior occasions, the charged offense was categorized as a felony of the fifth degree. Bardos pleaded not guilty to the charge at arraignment. The matter proceeded to a jury trial and Bardos was found guilty of the single count in the indictment. The trial court imposed a nine-month term of incarceration.

{¶3} On appeal, Bardos raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT
OF VIOLATING A PROTECTION ORDER.

## ASSIGNMENT OF ERROR II

THE GUILTY VERDICT WAS ISSUED AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE PRESENTED AT TRIAL.

{¶4}   Bardos argues that his conviction for violating a protection order was not supported by sufficient evidence and was against the weight of the evidence.  This Court disagrees.

{¶5}   Bardos was convicted under R.C. 2919.27(A)(1), which states, "No person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to [R.C. 3113.31]." R.C. 2919.27(B)(1) states, "[w]hoever violates this section is guilty of violating a protection order."  R.C. 2901.22(C) states that "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

### Sufficiency of the Evidence

{¶6}   In support of his sufficiency challenge, Bardos contends that the State failed to demonstrate that he acted recklessly in violating the protection order.  Bardos further contends that there was not a reliable identification in this case.

{¶7}   A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations.  *State v. Gulley*, 9th

Dist. Summit No. 19600, 2000 WL 277908, *1 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} The case involves the turbulent relationship between Bardos and his ex-girlfriend, E.D. Bardos and E.D. entered into a romantic relationship while E.D. was in her late teens. The couple had two children before the relationship became physically and emotionally abusive. At trial, E.D. explained that "there was always lots of yelling and shoving and I didn't feel safe." On January 6, 2012, E.D. obtained a five-year domestic violence civil protection order against Bardos pursuant to R.C. 3113.31. Under the terms of the protection order, Bardos was prohibited from being within 500 yards of E.D. The protection order further stated that "If [Bardos] accidentally comes in contact with protected persons in any public or private place, [Bardos] must depart *immediately*. This Order includes encounters on public and private roads, highways, and thoroughfares." The State introduced exhibits at trial demonstrating that Bardos had been convicted of violating the protection order on two separate occasions prior to the instant case.

{¶9} By late 2014, E.D. had become engaged to N.H. and the couple was expecting a child. On October 25, 2014, E.D. and N.H. were taking E.D.'s two children to a Halloween

party at a friend's house in West Salem. On the way to the party, E.D. stopped at a Stop-N-Go so that N.H. could purchase cigarettes. When N.H. exited the vehicle, E.D. noticed a black Dodge Caravan with Bardos in the passenger seat pulling into the parking lot. E.D. testified that she made eye contact with Bardos. She recognized the van because Bardos had owned that vehicle at the time of their relationship. E.D. called for her fiancé to get back in the car and, when he returned, they quickly exited the parking lot. As she was leaving, she saw Bardos getting out of the van. E.D. and N.H. did not notice anyone following them so they proceeded to the Halloween party with the children.

{¶10} After the party concluded, E.D., N.H., and the children got in their car and began driving home. En route to Medina, E.D. noticed that she was being tailgated by a black van. E.D. testified that the van "was too close for comfort and it just stayed on my bumper." The van continued to follow her as she turned onto the street where her apartment was located. Not wanting to disclose where she lived, E.D. bypassed the entrance to her apartment complex and pulled into the parking lot of a nursing home. While E.D. was idling in the parking lot, she noticed the van pull into the last driveway before the nursing home. The driver of the van did not pull into a parking space and instead stopped at the end of the driveway. When E.D. attempted to exit the nursing home parking lot, the van immediately reversed in front of her and blocked her access to the road. With the driver's side of the van approximately 20 feet away, E.D. recognized that it was the black Dodge Caravan, and she could see that Bardos was the driver. Though it was dark, E.D.'s headlights were illuminating the driver's side of the vehicle. While N.H. was unable to see the driver because he is legally blind, E.D. testified that she was "pretty sure [it was Bardos] because [she] could see him." The van sped away when N.H. pulled out his cell phone. E.D. and N.H. followed the van briefly in hopes of getting a license plate

number but they were unsuccessful. E.D. testified that she decided against filing a police report that evening because she was shaken up. The next day, however, E.D. and N.H. went to the police station and filled out a report.

{¶11} The evidence presented at trial, when construed in the light most favorable to the State, was sufficient to establish that Bardos recklessly violated the protection order. Even assuming arguendo that Bardos did not act recklessly during the incident at the Stop-N-Go, there is no question that Bardos acted with heedless indifference toward the dictates of the protection order when he tailgated E.D. on a public roadway and then subsequently blockaded her into the driveway at the nursing home. Moreover, while Bardos challenges the reliability of the identification in this case, E.D. testified that Bardos was the driver of the van that followed her and then subsequently blocked her from exiting the nursing home. E.D. explained that she was within 20 feet of the van when she saw Bardos, and that her headlights were shining directly on the driver's side of the van. This evidence, if believed, was sufficient to convict Bardos of violating a protection order. *See State v. Walker*, 55 Ohio St.2d 208, 213 (1978).

**Manifest Weight of the Evidence**

{¶12} In his second assignment of error, Bardos contends that the manifest weight of the evidence supports the conclusion that he was not present during either incident referenced by E.D. during her testimony. In support of this position, Bardos renews his contention that the identification provided by E.D. at trial was unreliable.

{¶13} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence

and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony."  *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases.  *Otten* at 340.

**{¶14}**  As noted above, E.D. testified that she encountered Bardos twice on the night of October 25, 2014.  E.D. testified that she made eye contact with Bardos at the Stop-N-Go as he got out of his black Dodge Caravan.  While she acknowledged that it was merely her "opinion" that she saw Bardos, she later testified that she had "[n]o doubt at all" that is was Bardos.  Sergeant Calvin Undercoffer testified that while the surveillance video from the Stop-N-Go showed a man getting out of a dark van who could have been Bardos, he could not definitively say whether it was Bardos.  With respect to the incident after the party, E.D. testified that she saw Bardos in the black van that backed in front of her and prevented her from accessing the roadway.  Though E.D. was not able to obtain a license plate number for the van, she recognized the black Dodge Caravan that Bardos was driving.

**{¶15}**  Bardos testified in his own defense at trial and sharply refuted E.D.'s testimony.  Bardos testified that he was never at the Stop-N-Go on October 25, 2014.  Bardos further denied following E.D. later that evening.  When asked if any of E.D.'s testimony was true, Bardos responded, "No, none of it."  Bardos maintained that he spent that evening at his home playing "ShellShock Nam '67," a Vietnam-based video game.

{¶16} A thorough review of the record reveals this is not the exceptional case where the evidence presented at trial weighed heavily against conviction. E.D. identified Bardos as the driver of the van who tailgated her and then subsequently blockaded her from accessing the roadway when she attempted to drive out of the nursing home parking lot. This Court has consistently held that the trier of fact is in the best position to evaluate the credibility of witnesses and resolve factual disputes. *State v. Binford*, 9th Dist. Summit No. 27950, 2016-Ohio-7678, ¶ 10, citing *State v. McNeil*, 9th Dist. Summit No. 27720, 2016-Ohio-4669, ¶ 16. While E.D. and Bardos offered sharply contrasting stories at trial, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe the testimony of a particular witness. *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice when it convicted Bardos of violating a protection order. *Otten*, 33 Ohio App.3d at 340.

{¶17} As Bardos' conviction was supported by sufficient evidence and was not against the weight of the evidence, his assignments of error are overruled.

III.

{¶18} Bardos' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

CHELSAY B. JACKSON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.