[Cite as *State v. Boatright*, 2017-Ohio-5794.]

STATE OF OHIO        )                  IN THE COURT OF APPEALS
                             )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                       C.A. No.     28101

     Appellee

     v.                            APPEAL FROM JUDGMENT
                                  ENTERED IN THE
JEFFREY A. BOATRIGHT          COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
     Appellant                  CASE No.    CR 2015 03 0731

DECISION AND JOURNAL ENTRY

Dated: July 12, 2017

CARR, Presiding Judge.

**{¶1}** Defendant-Appellant Jeffrey Boatright appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** A few weeks after M.H., an adult, homosexual male, engaged in consensual, unprotected anal and oral intercourse with Boatright, M.H. developed persistent flu-like symptoms and went to an emergency room for treatment. Based upon his constellation of symptoms, M.H. was tested for, and ultimately diagnosed with, HIV. Boatright was also HIV positive; however, Boatright told M.H., prior to engaging in sexual conduct with M.H., that Boatright was negative.

**{¶3}** Boatright was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1). Thereafter, a supplemental indictment was filed adding a charge of felonious assault in violation of R.C. 2903.11(B)(1). That count alleged that Boatright knowingly engaged

in sexual conduct with M.H. without disclosing to him, prior to engaging in sexual conduct, that Boatright had tested positive for HIV.

{¶4} Upon motion of the State, the first count, based upon R.C. 2903.11(A)(1), was dismissed. The matter proceeded to a jury trial on count two, at which the primary issue was whether Boatright knew, at the time he engaged in sexual conduct with M.H., that Boatright had tested positive for HIV. The jury found Boatright guilty, and the trial court sentenced Boatright to five years in prison.

{¶5} Boatright has appealed, raising seven assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

R.C. 2903.11(B)(1) IS UNCONSTITUTIONAL ON ITS FACE AND/OR AS APPLIED TO MR. BOATRIGHT IN THAT SAID STATUTE VIOLATES 1) THE EQUAL PROTECTION CLAUSE[S] OF THE UNITED STATES AND OHIO CONSTITUTIONS; 2) THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT AND SECTION 11, ARTICLE 1, OF THE OHIO CONSTITUTION; AND 3) PROHIBITIONS AGAINST DISCRIMINATION ON THE BASIS OF DISABILITY, ANY OF WHICH CONSTITUTES ERROR REQUIRING REVERSAL OF MR. BOATRIGHT'S CONVICTION.

{¶6} Boatright argues in his first assignment of error that R.C. 2903.11(B)(1) is unconstitutional on its face and as applied.

{¶7} "Legislative enactments are afforded a strong presumption of constitutionality." *State v. Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 28, citing *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). "[I]f at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *Collier* at 269. "A party asserting that a statute is unconstitutional must prove that the statute is unconstitutional beyond a reasonable doubt." *Smith* at ¶ 28. "'The failure to challenge the constitutionality of a statute in the trial court forfeits

all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it.'" *Id.*, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2.

{¶8} Boatright did not raise this issue in the trial court, and has thus, forfeited all but plain error. *See Smith* at ¶ 28. While Boatright has mentioned plain error on appeal, he has failed to develop a plain error argument. *See* App.R. 16(A)(7); *see also M.H. v. J.P.*, 9th Dist. Lorain Nos. 15CA010832, 15CA010833, 2017-Ohio-33, ¶ 10. We decline to create an argument on his behalf and overrule his first assignment of error on that basis.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT DENIED MR. BOATRIGHT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL.

## ASSIGNMENT OF ERROR III

MR. BOATRIGHT'S CONVICTION FOR FELONIOUS ASSAULT IS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE AND MUST BE REVERSED.

{¶9} Boatright argues in his second assignment of error that the trial court erred in failing to grant his Crim.R. 29 motion. In his third assignment of error, he asserts that his conviction was based upon insufficient evidence. Specifically, in both arguments, he asserts that the State presented insufficient evidence to demonstrate that, prior to engaging in sexual conduct with M.H., Boatright knew that he had tested positive for HIV. We will limit our analysis accordingly.

{¶10} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶11}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶12}** R.C. 2903.11(B)(1) states that, "[n]o person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly * * * [e]ngage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B).

**{¶13}** The record reflects that, prior to November 13, 2014, M.H. and Boatright were just friends and would text each other often. Because M.H. was having problems with his boyfriend and wanted to have "fun," he contacted Boatright and went over to his house around 11 p.m. on November 13, 2014. The two had a few alcoholic drinks and watched TV. Boatright then asked M.H. to give him a massage. M.H. declined because he knew Boatright had a boyfriend. However, M.H. came to discover that Boatright and his boyfriend were having problems.

**{¶14}** Shortly thereafter, M.H. left and went downtown, but, before long, returned to Boatright's house. Boatright began to make sexual advances and M.H. began to ask Boatright about his sexual history. Boatright indicated that he last had sex with someone in September 2014, was tested for sexually transmitted diseases, including HIV, shortly thereafter, and that the result "was negative." After that discussion, the two engaged in unprotected, consensual anal and oral intercourse; Boatright penetrated M.H. orally and anally. Afterwards, M.H. went home and the two never engaged in sex again.

**{¶15}** M.H. testified that, prior to that night, M.H.'s last HIV test was the summer of 2013, and it was negative. Approximately a week and a half after M.H. and Boatright had sex, M.H. began to develop flu-like symptoms. About a week after that, M.H. presented to an emergency room as he was still suffering from flu-like symptoms. Based upon his history and symptoms, doctors ordered an HIV test. Both the preliminary and confirmatory tests came back positive for HIV.

**{¶16}** M.H. contacted Boatright while M.H. was waiting for his test results and told Boatright there was a possibility he gave M.H. HIV. Boatright again stated he was HIV negative and said he was sorry M.H. had to go through the situation. After M.H. got his results, he again spoke to Boatright. Boatright kept saying how sorry he was but never stated that he had been deceptive about his HIV status. However, at the end of their conversation, M.H. testified that Boatright stated, "I'm sorry, man. I lied."

**{¶17}** After M.H. received his test results, he kept stating that he did not want to live life having HIV. In light of those statements, as a precaution, M.H. was admitted to a psychiatric unit for observation.

{¶18}  With respect to when Boatright had knowledge that he was infected with HIV, the State presented witnesses who worked at CSL Plasma and Summit County Public Health ("Health Department").  The testimony indicated that Boatright had been a plasma donor at CSL Plasma since 2008.  The center manager of CSL Plasma, Joseph Jacko, testified that the company screens blood for HIV, hepatitis, other sexually transmitted diseases, and drugs of abuse.  The initial testing is performed in Knoxville, Tennessee, and if the sample tests positive, it is sent for a confirmatory test at a different laboratory in North Carolina.  If the sample tests positive for HIV, the donation associated with the sample would be destroyed and the state health department would be notified.  He indicated that donors were paid between $20 and $50 for donating.

{¶19}  He further testified that, prior to donation, donors have to complete a questionnaire.  Some of those questions are designed to identify donors who engage in "high risk activities."  Donors who are determined to engage in high-risk activities are not allowed to donate.  For example, if a male donor indicates that he has had sex with other men, he is disqualified from donating.

{¶20}  Boatright donated plasma on August 22, 2011, and August 25, 2011.  As part of the August 22, 2011 donation, Boatright indicated on the questionnaire that he was not in an increased risk group, and that he had not had sex with another man.

{¶21}  The August 22, 2011 donation tested positive for HIV in the preliminary test on August 30, 2011, and that result was confirmed on September 2, 2011.  CSL Plasma sent out a certified letter to Boatright on September 2, 2011, but it was returned.  Additionally, Boatright was called on October 13, 2011, but there was no response.

{¶22} Leanne Beavers, the Assistant Director of Community Health with the Health Department, testified that Boatright's positive results were first entered into the Ohio Disease Reporting System on September 15, 2011. She testified that any positive HIV test is reported to the appropriate local health department. The Health Department's records indicate that, with respect to Boatright's positive HIV results, one of the Health Department's employees called Boatright on September 2, 2011, but there was no response, and a letter was mailed to him September 6, 2011. The letter, however, was returned indicating that there was no such address on that street. The records further indicate that Boatright was twice scheduled to come into the Health Department for an appointment, the purpose of which was to inform him of his HIV diagnosis and link him to care, but he did not show up for either appointment. When the employee attempted to reschedule again, the phone was not answered. After that, the case was closed. Ms. Beavers indicated that the policy of the Health Department was that employees were not allowed to give test results over the phone; instead, results had to be given to the individual at a face-to-face meeting. She also indicated that, prior to the in-person visit, the patient would only "know that there's a problem" and the patient needs to be seen "face to face."

{¶23} On December 12, 2012, Boatright returned to CSL Plasma and was counseled about his test results. Bonnie Chapman, who at the time was a registered nurse who worked for CSL Plasma, testified that she counseled Boatright. Specifically, she testified that CSL Plasma's policy for counseling donors who tested positive for HIV was that the donor would be brought into a room, the donor would be told about the positive HIV test, the person's address would be confirmed, he or she would be asked if the donor had engaged in sexual activity with any other donors, he or she would be informed that the donor can no longer donate, and the person would be told to go immediately to his or her health care provider for follow-up testing and care.

Further, the donor would be given a form that states that the person tested positive for HIV and provides other relevant information; that form does not include personal identifying information for privacy reasons. That counseling session would be documented in an electronic record. Ms. Chapman then testified about her counseling session with Boatright on December 12, 2012, and the supporting electronic documentation. She confirmed that she told Boatright on December 12, 2012, that he was positive for HIV and gave him the appropriate form. Ms. Chapman testified that, from her recollection, when she told Boatright he had tested positive for HIV, she was expecting a reaction but did not get one. Instead, he said, "Okay; and he left."

{¶24} Based on the evidence discussed above, we conclude that the trial court did not err in denying Boatright's Crim.R. 29 motion, and also conclude that, when the evidence is viewed in a light most favorable to the State, sufficient evidence was presented whereby a jury could reasonably conclude that Boatright knew that he had tested positive for HIV prior to engaging in sexual conduct with M.H. If believed, Ms. Chapman's testimony evidences that Boatright was told that he tested positive for HIV on December 12, 2012. Boatright engaged in sexual conduct with M.H. in November 2014. Prior to engaging in sexual conduct with M.H., Boatright did not inform M.H. that Boatright had tested positive for HIV.

{¶25} Boatright's second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

MR. BOATRIGHT'S CONVICTION FOR FELONIOUS ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.

{¶26} Boatright argues in his fourth assignment of error that his conviction is against the manifest weight of the evidence. Specifically, he maintains that, with respect to the issue of

his knowledge of the HIV test results, the defense testimony was more credible than the testimony presented by the State.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶27} Boatright presented two witnesses in support of his case: himself and Frank Osco with the Health Department.

{¶28} Boatright testified that since 2008 he has either worked for, or volunteered at, the Akron AIDS Collaborative. He stated that he was an outreach worker. His responsibilities included counseling young people about the prevention and detection of HIV and also assisting newly diagnosed HIV patients with receiving treatment and care. The organization would also host community events to educate teenagers. Boatright testified that, once he started working there, he was regularly tested for HIV.

{¶29} Boatright testified that he began donating plasma in 2007 or 2008. He denied doing it for the money, and instead testified that he did it because the plasma was used to make medications. Boatright admitted to lying on the CSL Plasma questionnaire about his sexual history. He said he did so because he wanted to help people and did not think that his sexual orientation should prevent him from donating.

{¶30} Following his donations in August 2011, Boatright averred that he never received a letter or any phone call from the Health Department. When he returned to CSL Plasma on December 12, 2012, to donate again, he admits he was informed that he was unable to donate because of unsuitable test results. However, he maintained, that he was never told what the

results were or why they were unsuitable. He believed that the unsuitable results could have been for any number of reasons, including too much protein in his blood. He indicated that he was never told by Ms. Chapman or anyone else at CSL Plasma that he was HIV positive, and he never received a form or a copy of a test result stating he was HIV positive. Boatright also testified that he never exhibited any symptoms typically associated with HIV since 2011. If he had been informed that he was HIV positive in 2011 or 2012, Boatright stated that he would have begun treatment at that time.

**{¶31}** Boatright admitted during his testimony that his partner, whom he was dating at the time he engaged in sexual conduct with M.H., tested positive for HIV in March 2013. The parties also entered into a stipulation with respect to this fact. Boatright stated that, after he learned of the diagnosis, the two men waited to have sex until after his boyfriend's viral load was undetectable and also used condoms. Boatright acknowledged that he lied to Mr. Osco when Boatright told Mr. Osco that his partner was negative for HIV.

**{¶32}** Boatright testified that he engaged in oral and anal intercourse with M.H. on November 13, 2014. He stated that he did not use a condom because he thought he was HIV negative. He acknowledged that he and M.H. discussed their respective HIV statuses that night. A couple of weeks later, M.H. contacted Boatright and told him that he needed to see a doctor as there was a possibility that he had HIV. After Boatright's at-home HIV test came back positive, he then went to the Health Department for testing.

**{¶33}** Mr. Osco, a registered nurse with the Health Department, testified that in December 2014, Boatright came to the Health Department and requested HIV testing because he was informed that one of his sexual contacts was hospitalized with an HIV diagnosis, and because the home test Boatright took thereafter was positive. Mr. Osco indicated that both

Boatright's preliminary and confirmatory HIV tests were positive. Mr. Osco also discovered the prior 2011 positive result while researching Boatright in the Ohio Disease Reporting System. When Mr. Osco informed Boatright of the results in early 2015, Boatright became emotional and seemed very sincere. Boatright told Mr. Osco that he had been in a relationship for two years and the only other person he had sexual contact with was M.H. Boatright declined to name his partner, but indicated that he had told the partner about the possibility Boatright had HIV and his partner had thereafter tested negative. Mr. Osco testified that he informed Boatright of the prior positive result, and Boatright maintained that he was never contacted by anyone about it.

{¶34} After a thorough, independent review of the record, we conclude that the jury did not lose its way in finding Boatright guilty of felonious assault. The jury was presented with two competing views of the evidence. Ms. Chapman clearly testified that she informed Boatright in 2012 that he had tested positive for HIV. Boatright denied that he ever received that information and averred that he had no knowledge he had tested positive for HIV prior to engaging in sexual conduct with M.H. Boatright testified about his work in the community to prevent and educate people about HIV and AIDS and about his knowledge of the importance of testing and receiving prompt treatment. He also presented Mr. Osco's testimony, which, if believed, could evidence that Boatright was surprised by the HIV diagnosis in 2015. However, the jury also heard about the multiple instances in which Boatright lied. He lied on the CSL Plasma questionnaires and to Mr. Osco about Boatright's partner's HIV status. Additionally, M.H. testified that, following his diagnosis, Boatright apologized for lying. "This Court has consistently held that the trier of fact is in the best position to evaluate the credibility of witnesses and resolve factual disputes." *State v. Bardos*, 9th Dist. Medina No. 15CA0082-M, 2016-Ohio-8091, ¶ 16. While the State and defense presented sharply contrasting stories at trial, this Court will not overturn the jury's

verdict on a manifest weight of the evidence challenge merely because the trier of fact opted to believe the testimony of a particular witness. *Id.* Under these circumstances, and in light of the argument made on appeal, we cannot say that the trier of fact lost its way and committed a manifest miscarriage of justice in finding Boatright guilty of felonious assault.

**{¶35}** Boatright's fourth assignment of error is overruled.

<u>**ASSIGNMENT OF ERROR V**</u>

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED STRUCTURAL, REVERSIBLE AND/OR PLAIN ERROR BY FAILING TO FURNISH PROPER JURY INSTRUCTIONS.

**{¶36}** Boatright argues in his fifth assignment of error that the trial court abused its discretion and committed plain and/or structural error in failing to furnish proper jury instructions. Specifically, Boatright appears to argue that the trial court should have used the dictionary definition of "knowledge[,]" as opposed to the definition of knowledge contained within the definition of "knowingly" in former R.C. 2901.22(B).[1]

**{¶37}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. Although trial courts enjoy broad discretion in fashioning jury instructions, they must present a correct, pertinent statement of the law that is appropriate to the facts." (Internal quotations and citations omitted.) *State v. Jackson*, 9th Dist. Summit No. 27739, 2017-Ohio-278, ¶ 23. However, errors in jury instruction can be harmless. *See State v. Penix*, 9th Dist. Summit No. 23699, 2008-Ohio-1051, ¶ 29.

---

[1] While Boatright mentions that the trial court should have instructed the jury that knowledge was common enough that it did not require an instruction, he has not further developed this argument, and we decline to develop an argument for him. *See* App.R. 16(A)(7).

{¶38} R.C. 2903.11(B)(1) states that "[n]o person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly * * * [e]ngage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct[.]" Accordingly, both "knowledge" and "knowingly" are elements of the offense.

{¶39} At trial, defense counsel objected to the definition of knowledge proposed by the trial court, which was based upon the portion of the definition of "knowingly" contained in former R.C. 2901.22(B) that states "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." Defense counsel argued that inclusion of language involving probability was inappropriate. While the dictionary definition of the term was discussed, it did not appear that, after hearing that definition, defense counsel supported giving that definition either. After reading the dictionary definition, the trial court remarked that it was unsure what that definition meant, and defense counsel commented that it "[m]eans that the dictionary is written about as good as the law." Then near the end of the discussion, defense counsel stated that he didn't think the term needed to be defined. Thus, while the record is clear that defense counsel objected to the trial court's proposed version, it does not appear that defense counsel preserved an argument that the dictionary definition should have been given. Moreover, we cannot say that the dictionary definition advocated by Boatright on appeal and considered by the trial court at trial is clear given that it repeatedly uses the word knowledge in defining knowledge.[2]

---

[2] The dictionary definition as detailed by the trial court is as follows: "Knowledge. The state or fact of knowing. Knowing is possessing knowledge, intelligence, or information. Possessing knowledge, information, or understanding. Possessing knowledge, information. And then knowledge is a state of mind."

**{¶40}** Instead, the trial court instructed the jury on knowledge as follows:

Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You'll determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that he had tested positive as a carrier of a virus that causes Acquired Immunodeficiency Syndrome[.]

You will also determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that he engaged in sexual conduct with [M.H.] without disclosing the knowledge that he had tested positive as a carrier of a virus that causes Acquired Immunodeficiency Syndrome * * * prior to engaging in such sexual conduct.

**{¶41}** Given Boatright's limited argument, we cannot say that the trial court committed reversible error in giving the foregoing instruction. Boatright has not pointed to any law indicating the definition of knowledge contained within the definition of knowingly in former R.C. 2901.22(B) was inappropriate to give under these circumstances or that the other related language used by the trial court was erroneous. *See State v. Kearns*, 10th Dist. Franklin No. 15AP-244, 2016-Ohio-5941, ¶ 9, 20-28 (concluding, in a case involving disseminating matter harmful to juveniles with knowledge of the material's character or content, the appropriate definition of knowledge was the one contained in the version of R.C. 2901.22(B) in effect at the time of the offense); *see also State v. Teamer*, 82 Ohio St.3d 490, 492 (1998) (discussing that "the element of knowledge" is determined from the facts and circumstances of the case and involves an awareness of probability).

**{¶42}** Based on the foregoing, Boatright's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR AND/OR PLAIN ERROR WHEN IT SENTENCED MR. BOATRIGHT TO A FIVE (5) YEAR PRISON SENTENCE CONTRARY TO APPLICABLE SENTENCING STATUTES.

{¶43} Boatright argues in his sixth assignment of error that the trial court committed reversible error and/or plain error in sentencing Boatright to five years in prison contrary to the purposes of felony sentencing as contained in R.C. 2929.11.

{¶44} "In reviewing a felony sentence, '[t]he appellate court's standard for review is not whether the sentencing court abused its discretion.'" *State v. Howard*, 9th Dist. Lorain No. 15CA010857, 2016-Ohio-7077, ¶ 5, quoting R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law." (Internal quotations omitted.) *Howard* at ¶ 5, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. "Clear and convincing evidence is that which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations and citations omitted.) *Howard* at ¶ 5.

{¶45} Boatright was convicted of violating R.C. 2903.11(B)(1), a felony of the second degree. *See* R.C. 2903.11(D)(1)(a). Pursuant to R.C. 2929.14(A)(2), the trial court was authorized to sentence Boatright to two, three, four, five, six, seven, or eight years in prison. Thus, the trial court's sentence of five years in prison fell within the statutorily authorized range.

{¶46} To the extent Boatright argues that the trial court, nonetheless, committed reversible error in sentencing Boatright to five years in prison, we conclude that we are unable to fully evaluate his argument because the presentence investigation report, the statements by Boatright's friends, and the victim impact statement, which the trial court considered in sentencing Boatright, have not been included in the record on appeal. "It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal." *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M,

2016-Ohio-7919, ¶ 16, citing App.R. 9. "This Court has consistently held that, where the appellant has failed to provide a complete record to facilitate appellate review, we are compelled to presume regularity in the proceedings below and affirm the trial court's judgment." *Farnsworth* at ¶ 16. In cases such as this where the presentence investigation report and other documents are necessary to enable an appropriate review of the propriety of the sentence, Boatright's failure to ensure that the record includes those documents requires a presumption of regularity in the sentencing proceedings. *See id.* In light of the incomplete record on appeal, Boatright's sixth assignment of error is overruled.

**ASSIGNMENT OF ERROR VII**

MR. BOATRIGHT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**{¶47}** Boatright argues in his seventh assignment of error that he was denied the effective assistance of trial counsel. Specifically, he argues that his trial counsel was ineffective for failing to challenge the constitutionality of R.C. 2903.11(B)(1) and in failing to object to the five year prison sentence.

**{¶48}** "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Thus, a two-prong test is necessary to examine such claims. First, Boatright must show that counsel's performance fell below an objective standard of reasonable representation. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*, 466 U.S. at 687. Second, Boatright must demonstrate that he was prejudiced by the deficient performance by demonstrating that, but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. An appellant's failure to satisfy one prong of

the test negates a reviewing court's need to consider the remaining prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶49}** We note that with respect to both claims of ineffective assistance, Boatright has made only a very general, undeveloped argument. *See* App.R. 16(A)(7).

**{¶50}** With respect to trial counsel's failure to challenge the constitutionality of the statute, we note that Boatright has not referred us to any case that has held R.C. 2903.11(B)(1) to be unconstitutional, nor is this Court aware of any. Moreover, at least one district has concluded the statute is constitutional. *See State v. Batista*, 1st Dist. Hamilton No. C-150341, 2016-Ohio-2848 (concluding the statute did not violate the Equal Protection Clause or the First Amendment). We also remain mindful that "[l]egislative enactments are afforded a strong presumption of constitutionality." *Smith*, 2017-Ohio-359, at ¶ 28, citing *Collier*, 62 Ohio St.3d at 269. Given the foregoing, we cannot say that Boatright has demonstrated that his trial counsel's performance fell below an objective standard of reasonable representation. *See Keith* at 534.

**{¶51}** With respect to Boatright's contention that his trial counsel was ineffective for failing to object to the five year prison term, based on the limited record on appeal, we likewise cannot determine that Boatright's trial counsel's representation was deficient. In the absence of the complete record, we are required to presume regularity in the proceedings and affirm the trial court's judgment. *See Farnsworth*, 2016-Ohio-7919, at ¶ 16.

**{¶52}** Accordingly, as Boatright has not demonstrated that his trial counsel's representation was deficient, Boatright has not demonstrated that he received ineffective assistance of trial counsel. *See Madrigal*, 87 Ohio St.3d at 388-389.

**{¶53}** Boatright's seventh assignment of error is overruled.

III.

**{¶54}** Boatright's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.