[Cite as *State v. Moore*, 2020-Ohio-3708.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DEXTER L. MOORE

    Appellant

C.A. Nos.    29417
                29418

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    CR 18 02 0431(B)
                CR 16 11 4057

DECISION AND JOURNAL ENTRY

Dated: July 15, 2020

---

CARR, Judge.

{¶1} Appellant, Dexter Moore, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a deadly shooting that occurred in Akron, Ohio on the evening of November 16, 2017. D.A. was shot multiple times on Oakdale Avenue as he was walking home after patronizing the Baho Convenience Store ("Baho").

{¶3} The Akron Police Department conducted an extensive investigation into the shooting. Jerry Alford was the first person charged in relation to the incident. Alford was ultimately convicted of multiple offenses, including murder.

{¶4} Several months after Alford was indicted, the Summit County Grand Jury returned an indictment charging Moore in relation to the incident as well. Moore was charged with one

count of aggravated robbery with a firearm specification, one count of felonious assault with a firearm specification, one count of felonious assault by means of a deadly weapon with a firearm specification, and one count of obstructing justice. Moore pleaded not guilty to the charges at arraignment.

{¶5}   The matter proceeded to a jury trial where Moore and Alford were tried together. Prior to trial, the State moved to dismiss the count of aggravated robbery along with the attendant firearm specification against Moore.  The jury found Moore guilty of one count of complicity to commit felonious assault and one count of obstructing justice.  The jury found Moore not guilty of felonious assault by means of a deadly weapon and the firearm specifications.

{¶6}   The trial court imposed upon Moore a five-year prison sentence for felonious assault and a three-year prison sentence for obstructing justice and ordered that those sentences be served concurrently.  The trial court further ordered that Moore's five-year prison sentence in Case No. CR 18 02 0431(B) was to be served consecutive to a one-year sentence imposed in Case No. CR 16 11 4057.

{¶7}   Now before this Court, Moore raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE
TO SUSTAIN [A] CONVICTION.  THE TRIAL COURT ERRED BY DENYING
APPELLANT'S CRIM.R. 29 MOTION.

{¶8}   In his first assignment of error, Moore contends that the trial court erred in denying his motion for a judgment of acquittal as to the charges of complicity to commit felonious assault and obstructing justice.  This Court disagrees.

{¶9}   Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶10} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶11} Moore was convicted of complicity to commit felonious assault. R.C. 2903.11(A)(1), which governs felonious assault, states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶12} Complicity is governed by R.C. 2923.03(A)(2), which states, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" "A conviction based on complicity by aiding and abetting

under R.C. 2923.03(A)(2) must be based on evidence showing 'that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' This intent may be inferred from the surrounding circumstances." (Internal citation omitted.) *State v. Parsons*, 9th Dist. Lorain No. 18CA011328, 2019-Ohio-5021, ¶ 13, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶13} Moore was also convicted of obstructing justice in violation of R.C. 2921.32(A)(5)/(C)(4). R.C. 2921.32(A)(5) provides that "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime[] * * * shall * * * [c]ommunicate false information to any person[.]" R.C. 2921.32(C)(4) provides that if the crime by the person aided is aggravated murder, murder, or a felony of the first or second degree, then obstructing justice is a felony of the third degree.

{¶14} On appeal, Moore argues that there is no evidence that he knowingly aided or abetted Alford in the assault on D.A. Moore contends that he was merely at Baho on the date of the incident and that the State failed to demonstrate that he had any knowledge of Alford's intentions to carry out an assault. Moore further points to the jury verdicts in this case, which he describes as "confused and contradictory[,]" in support of the proposition that the jury's verdicts did not speak to its real conclusions. In regard to his conviction for obstructing justice, Moore argues that the State failed to demonstrate that he took any action to hinder the investigation.

{¶15} The State presented evidence at trial of the following narrative. At approximately 5:30 on the evening of November 16, 2017, D.A. walked into the Highland Square Pharmacy where he saw his cousin, W.A. The two men had not seen each other in several months. After a brief conversation, W.A. agreed to give D.A. a ride to his apartment on Oakdale Avenue, which

was about five minutes away. During the short car ride down West Market Street, D.A. said that, when he was at the bus stop that morning, someone had told him that they were going to shoot him. When W.A. inquired as to who made the statement, D.A. responded that he did not know the person who made the statement or why it was made.

{¶16} D.A. asked to be dropped off at Baho, which is across the street from his house. When they pulled up to the store, they noticed two men standing outside. D.A. stated that one of the men was the individual from the bus stop who said that he would shoot D.A. W.A. asked if D.A. was referring to the man wearing a gray hat, and D.A. responded in the affirmative. At trial, W.A. identified the man in the gray hat, who had indicated that he was going to shoot D.A., as Alford. W.A. could not see the other man's face. As D.A. exited the vehicle and entered the store, the two men in front of the store relocated to the side of the store. W.A. testified that he saw the two men making their way back to the front of the store as he pulled out of the parking lot.

{¶17} Around that time, the owner of a store on West Market Street heard a gun shot followed by a string of consecutive gunshots. The store owner called 9-1-1. When the store owner walked to her front window, which looks down Oakdale Avenue, she saw a black man who was wearing shoes with red soles running down the street. The store owner thought that the footwear was distinctive because only the soles of the shoes were red. Police responded to the scene and informed the store owner that a man had been shot on Oakdale Avenue. The victim, who was later identified as D.A., suffered a gunshot wound to the head and was later pronounced dead at a local hospital.

{¶18} Police conducted a canvass of the neighborhood and approached businesses seeking security video footage. While police were not able to identify any eye-witnesses to the shooting, they were ultimately able to obtain security video footage from Baho. Detective Richard Doney,

who served as the lead detective on this case, testified that the Baho footage helped Akron police to identify two suspects, Moore and Alford. Moore can be seen in the video wearing shoes with red soles. Though Moore and Alford entered Baho on multiple occasions on the evening of the shooting, neither of them made any purchases. When D.A. entered the store after exiting his cousin's vehicle, Alford entered the store shortly thereafter. Moore entered moments later. The video shows that Moore and Alford conversed with each other and, at one point, positioned themselves behind D.A. as he stood at the counter. Moore and Alford appeared to be attentive to D.A.'s movements. When D.A. ultimately decided to leave the store, Moore, seemingly at Alford's direction, can be seen watching where D.A. was going. Moore followed on the same path. Seconds later, Alford hurriedly walked on that same path as well.

{¶19} The security video shows that approximately 20 seconds after Moore and Alford left the store, a Baho patron walked out the door and suddenly turned his head to the right. The patron testified at trial that he looked in that direction because he heard a gunshot. Police found D.A.'s body on the tree lawn in front of 18 Oakdale Avenue. Alford's DNA was found on a cell phone that was discovered near scene. Alford's DNA was also found in saliva near the scene.

{¶20} Detective John Bell testified that a little over a month after the incident, Moore came to the police department and wanted to talk about the case. Moore explained that detectives had attempted to contact him to talk about the incident at Baho. Although Detective Bell had not been assigned to investigate the shooting of D.A., he was on duty when Moore arrived at the station and he conducted an interview. During the interview, Moore suggested that he did not see how D.A. arrived at Baho but he assumed it was by bus because D.A. was still wearing his work clothes Moore stated that he did not know anyone that he saw inside Baho that evening, that he was minding his own business, and that he simply exchanged pleasantries with several people inside

the store. Moore indicated that he did not have any interactions with D.A. Moore said that he was not paying attention when D.A. left the store and that he did not notice anyone following D.A. Moore further indicated that he was standing in the area of a newspaper vending machine and a dumpster outside of Baho when he heard five gun shots and started running. Moore recalled being shocked as he ran by a body on the ground.

{¶21} Later that evening. W.A. received a phone call from his sister indicating that D.A. had been shot and killed. W.A. got in his car and drove back to the area where he saw Alford riding a bike on Oakdale Avenue.

{¶22} Moore's argument that the trial court erred in denying his motion for a judgment of acquittal as to the charge of complicity to commit felonious assault is without merit. The State presented evidence that Moore worked cooperatively with Alford in the moments leading up to the shooting. Moore and Alford were standing together in front of Baho, which is in very close proximity to D.A.'s house. The security video from Baho shows that Moore and Alford were communicating with each other as they monitored D.A.'s movements after he entered the store. When D.A. walked out of the store, Moore can be seen tracking D.A. from the doorway and then following after him. Alford followed behind Moore and the shooting occurred approximately 20 seconds later. The aforementioned evidence, when construed in the light most favorable to the State, was sufficient to sustain Moore's conviction for complicity to commit felonious assault.

{¶23} With respect to Moore's argument that the verdicts did not represent the jury's actual conclusions in regard to the facts, we reiterate that this Court must construe the evidence in the light most favorable to the State when analyzing the sufficiency of the evidence. *See Jenks*, 61 Ohio St.3d at 279. Furthermore, as Moore couches his assignment of error in terms of whether

the trial court erred in denying his motion for a judgment of acquittal on all charges, we note that the jury's verdicts would have no bearing on the trial court's ruling on his Crim.R. 29(A) motions.

{¶24} The State further presented evidence to support Moore's conviction for obstructing justice. While Moore contends on appeal that he did not do anything to hinder the investigation, the evidence at trial demonstrated that Moore made several false statements in his interview with Detective Bell. Perhaps most significantly, Moore told Detective Bell that he was minding his own business in the store and that he did not notice anyone leaving with D.A., or following D.A. The security video shows that Moore, seemingly at the direction of Alford, watched D.A. as he left the store and then following D.A. himself. Moore's statement that he was merely standing in front of the store at the time he heard gunshots is also contradicted by the security video footage. This evidence was sufficient to survive Moore's motion for a judgment of acquittal on the charge of obstructing justice.

{¶25} The first assignment of error is overruled.

<b><u>ASSIGNMENT OF ERROR II</u></b>

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} In his second assignment of error, Moore contends that his convictions were against the manifest weight of the evidence. This Court disagrees.

{¶27} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶28} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶29} In support of his manifest weight challenge, Moore renews many of the arguments made in his sufficiency challenge. Moore contends that the evidence does not support the conclusion that he was at the scene of the shooting or took part in the crime in any way. Moore argues that the State failed to present evidence that Moore had knowledge that D.A. would be arriving at Baho, or that Moore and Alford were in communication prior to the incident. Moore further contends that the weight of the evidence supports the conclusion that he voluntarily cooperated with the investigation and spoke truthfully with Detective Bell.

{¶30} Upon a careful review of the record, we reject Moore's claim that the evidence in this case weighs heavily against conviction. Regardless of whether there was evidence that Moore and Alford communicated prior to November 16, 2017, the security video footage from Baho showed Moore and Alford working in tandem on the evening of the shooting. While Moore suggests that there was no credible evidence demonstrating that he and Alford were in communication that evening, a reasonable juror could interpret the security video footage as depicting Moore and Alford working in concert to track D.A.'s movements in the moments leading up to the shooting. To the extent that Moore suggests this interpretation of the footage is debatable,

or that the witness testimony regarding what transpired in the videos is not credible, we note that, in resolving a manifest weight challenge, "[t]his Court has consistently held that the trier of fact is in the best position to evaluate the credibility of witnesses and resolve factual disputes." *State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 34, quoting *State v Bardos*, 9th Dist. Medina No. 15CA0082-M, 2016-Ohio-8091, ¶ 16. Moreover, with respect to Moore's conviction for obstructing justice, Moore's contention that he spoke truthfully with Detective Bell is not supported by the weight of the evidence. Although Moore stated in the interview that he kept to himself and that he did not know anyone in the store, the security video footage shows him working in tandem with Alford. Furthermore, while Moore told Detective Bell that he was not paying attention to whether D.A. was alone when he left the store, the security video footage shows Moore watching D.A. as he left the store and then following him. Under these circumstances, we cannot conclude that this is the exceptional case where the trier of fact clearly lost its way.

{¶31} The second assignment of error is overruled.

III.

{¶32} Moore's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.