[Cite as *State v. Cornwell*, 2015-Ohio-4617.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 14AP0017 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GENE CORNWELL | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. CRB-14-01-00004 |

DECISION AND JOURNAL ENTRY

Dated: November 9, 2015

SCHAFER, Judge.

{¶1} Defendant-Appellant, Gene L. Cornwell, appeals from the judgment of conviction entered against him in the Wayne County Municipal Court. For the reasons set forth below, we affirm.

I.

{¶2} During the evening of January 2, 2014, law enforcement personnel were dispatched to an apartment on East Bowman Street in Wooster, Ohio for a domestic incident that was in progress. That incident involved Gene Cornwell and his fiancée, C.E.

{¶3} According to testimony elicited at trial, the incident in question began when Cornwell struck C.E. in the face with a black bag as well as his fists while he was intoxicated. C.E. immediately telephoned members of her family and asked them to come and pick her up. In response to this call, C.E.'s daughter, son, and son's girlfriend went to pick up C.E.

{¶4} Upon arriving at the apartment, C.E.'s family members heard Cornwell and C.E. yelling at each other. The family members asked Cornwell to open the door and let C.E. out of the apartment, but Cornwell refused. C.E. testified that Cornwell refused to let her leave the apartment because he feared that C.E.'s son would attack him. C.E. also testified that Cornwell hit her across the face when she attempted to open the door. Her family members all testified that they heard Cornwell hit C.E. C.E. then began throwing some of her belongings out of a bedroom window in an effort to leave.

{¶5} C.E.'s son was eventually able to force his way into the apartment. Once inside, C.E.'s son began punching Cornwell, causing him physical injury. C.E.'s son testified that he has physically harmed Cornwell on prior occasions, but only when Cornwell physically abuses his mother.

{¶6} Officer Dan Whitmore and Sergeant Clint Bartolic of the Wooster Police Department arrived at the scene shortly thereafter. Officer Whitmore testified that Cornwell had a deep cut above his eye which produced a pool of blood within the apartment. Officer Whitmore observed that Cornwell was angry, yelling profanities, and appeared to be intoxicated. Officer Whitmore further testified that C.E. was very upset and was crying. He also noticed that C.E.'s face was red around her right eye and that there was dried blood on the inside of her right nostril. Officer Whitmore subsequently placed Cornwell under arrest.

{¶7} Cornwell was charged with one count of domestic violence in violation of R.C. 2919.25(A), a first degree misdemeanor, and one count of unlawful restraint in violation of R.C. 2905.03(A), a third degree misdemeanor. Cornwell pled not guilty and the matter proceeded to a jury trial. The jury found Cornwell guilty on both counts. The trial court subsequently

sentenced Cornwell to 180 days in jail on the domestic violence conviction and 60 days in jail on the unlawful restraint conviction, with those sentences to be served consecutively.

{¶8} Cornwell filed this timely appeal and raises two assignments of error for our review.

II.

**Assignment of Error I**

**Mr. Cornwell's convictions are against the manifest weight of the evidence and not supported by sufficient evidence.**

{¶9} In his first assignment of error, Cornwell argues that his convictions for domestic violence and unlawful restraint are both unsupported by sufficient evidence and against the manifest weight of the evidence. Cornwell also contends that the jury's rejection of his self-defense claim is against the manifest weight of the evidence. We disagree.

A. Standard of Review

{¶10} Whether a conviction is supported by sufficient evidence is a question of law this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of syllabus. Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*.

**{¶11}** In determining whether a conviction is against the manifest weight of the evidence, on the other hand, an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins,* 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, a new trial should be granted only in the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

## B. Analysis

### 1. Domestic Violence

**{¶12}** R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a *family or household member*." (Emphasis added.) Cornwell argues on appeal that the State failed to present sufficient evidence establishing that C.E. was either a family or household member at the time of the January 2, 2014 incident.

**{¶13}** R.C. 2919.25(F)(1) provides that "family or household member" means "(a) [a]ny of the following who is residing or has resided with the offender: (i) A spouse, *a person living as a spouse*, or a former spouse of the offender." (Emphasis added.) At issue in this case is whether C.E. was a "person living as a spouse." R.C. 2919.25(F)(2) defines "person living as a

spouse" as "a person who * * * has *cohabited* with the offender within five years prior to the date of the alleged commission of the act in question." (Emphasis added.)

{¶14} With these definitions in mind, we determine that the State presented sufficient evidence to support Cornwell's conviction under R.C. 2919.25(A). While C.E. admitted that she did not live with Cornwell at the East Bowman Street apartment on January 2, 2014, she did testify on cross-examination that she and Cornwell had lived together at some point within five years prior to January 2, 2014. C.E.'s family members also corroborated her testimony on this point. Specifically, C.E. testified that she and Cornwell lived together on Rebecca Street in 2013. Moreover, C.E. testified that she was often an overnight guest at Cornwell's apartment and that she and Cornwell were engaged to be married. The trial testimony also demonstrates that C.E. kept personal belongings at Cornwell's apartment.

{¶15} Cornwell contends that the State failed to prove that C.E. was a family or household member, as defined in the statute. Specifically, Cornwell argues that the State failed to prove that he and C.E. cohabited. He cites to *State v. Williams*, 79 Ohio St.3d 459 (1997), paragraph two of the syllabus, for the proposition that "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." However, *Williams* involved a defendant and victim who "were going together," but maintained separate residences. *Id.* at 460. The Supreme Court of Ohio has subsequently clarified *Williams* as strictly applying "when the victim and the defendant do *not* share the same residence[.]" (Emphasis sic.) *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, ¶ 13. In *McGlothan*, the Court held that the "sharing of familial or financial responsibilities" does not *require* evidence of shared living expenses to establish cohabitation; rather, such conduct is but one of a non-exhaustive list of factors that a court may consider in determining cohabitation. *Id.* ¶ 13–14. The Supreme Court

of Ohio further emphasized that the domestic violence statute was enacted because the General Assembly "'believed that an assault involving a family or household member deserves further protection than an assault on a stranger.'" *Id.* at ¶ 17, quoting *Williams* at 463.

{¶16} Since R.C. 2919.25(F) encompasses a person who has cohabited with the offender within the past five years, we conclude that C.E.'s unrefuted testimony that she and Cornwell were engaged and had lived together within five years prior to the incident in question is sufficient to establish that she was a family or household member of Cornwell at the time of the January 2, 2014 offense. Therefore, we determine that the trial court did not err in denying Cornwell's Crim.R. 29 motion for judgment of acquittal.

{¶17} In addition to his sufficient evidence challenge, Cornwell also argues that the jury's domestic violence conviction is against the manifest weight of the evidence. Specifically, Cornwell contends that the jury lost its way in convicting him for domestic violence because no evidence was adduced on the issue of whether he and C.E. shared "familial or financial responsibilities." However, as noted above, the State was not required to prove shared familial or financial responsibilities in order to prove cohabitation under the facts of this case. *See id*. at ¶ 13-14. After reviewing the entire record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice by convicting Cornwell of domestic violence.

### 2. Self-Defense

{¶18} Moreover, Cornwell argues that his domestic violence conviction is against the manifest weight of the evidence because the greater weight of the evidence shows that he acted in self-defense. Cornwell contends that the manifest weight of the evidence demonstrates that he only struck C.E. in response to her first hitting him and as an effort to prevent C.E.'s family from entering the apartment and causing him harm. We disagree.

{¶19} "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used." *State v. Kozlosky,* 195 Ohio App.3d 343, 2011-Ohio-4814, ¶ 22 (8th Dist.). "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A). To establish self-defense, the defendant must show the following:

> (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Goff,* 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36, quoting *State v. Thomas,* 77 Ohio St.3d 323, 326 (1997). The "elements of self-defense are cumulative. * * * [Thus, i]f the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis sic.) *State v. Jackson,* 22 Ohio St.3d 281, 284 (1986). *Accord State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 73.

{¶20} At trial, C.E. testified that on January 2, 2014, she began gathering her personal belongings with the intention of leaving the apartment after discovering that Cornwell was intoxicated. Upon seeing C.E. packing, Cornwell hit her with a bag. C.E. testified that she does not remember where the bag struck her. C.E. also stated that Cornwell hit her with a closed fist while she was in the front room of the apartment while her family was outside. C.E.'s family members all testified that they heard Cornwell strike C.E. while she was in the front room, and that C.E. yelled for Cornwell to stop hitting her. Sergeant Bartolic testified that although Cornwell had a deep cut above one of his eyes, he did not think that C.E. was capable of causing such an injury.

{¶21} On cross-examination, Cornwell attempted to show that he acted in self-defense by hitting C.E. Specifically, C.E. conceded that she may have hit Cornwell on the day in question, but she could not remember whether she did so or not. C.E. further testified that Cornwell expressed fear in opening the front door because he did not want to be harmed by her family members who were present outside. Lastly, C.E. admitted that she has assaulted Cornwell in the past, but only in response to him striking her first. The jury, however, rationally could have disregarded Cornwell's narrative that he acted in self-defense and concluded that the State's version of the January 2, 2014 altercation was more credible than Cornwell's. In sum, we simply cannot conclude that the jury clearly lost its way when it determined that Cornwell did not act in self-defense.

### 3. Unlawful Restraint

{¶22} R.C. 2905.03, Ohio's unlawful restraint statute, provides that "[n]o person, without privilege to do so, shall knowingly restrain another of the other person's liberty." R.C. 2905.03(A). The term "privilege" means "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). The jury was instructed on this definition. Cornwell claims that he could not be convicted of unlawful restraint because he did not restrain C.E.'s liberty. Rather, Cornwell maintains that he refused to open the door to his apartment because he feared for his own safety. We disagree.

{¶23} We conclude that the State presented sufficient evidence to support Cornwell's conviction for unlawful restraint under R.C. 2905.03(A). While C.E. testified that Cornwell refused to open the door to the apartment out of fear of being assaulted by her family members, she also testified that she wanted to leave the apartment and that she threw her belongings out of

a window in an effort to leave. C.E.'s daughter, son, and son's girlfriend all testified that Cornwell refused to let her mother out of the apartment. C.E.'s daughter specifically testified that Cornwell told them that he was not going to let C.E. out of the apartment unless she was in a body bag. Viewing this evidence in a light most favorable to the State, we determine that the State presented sufficient evidence showing that Cornwell knowingly restrained C.E.'s liberty. As such, we conclude that the trial court did not err by denying Cornwell's Crim.R. 29 motion for judgment of acquittal.

{¶24} While Cornwell's appellate brief seemingly conflates his sufficient evidence and manifest weight challenges, we note that the jury apparently accepted the State's theory that Cornwell knowingly restrained C.E.'s liberty. Although Cornwell attempted to demonstrate through cross-examination that his motive for refusing to open the apartment door stemmed from fear for his own personal safety rather than wanting to prevent C.E. from leaving, the jury was free to disregard that theory. After reviewing the record, we cannot conclude that the jury lost its way and committed a miscarriage of justice in convicting Cornwell of unlawful restraint.

{¶25} Accordingly, Cornwell's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred by allowing in multiple references to alleged prior bad acts of Mr. Cornwell.**

{¶26} In his second assignment of error, Cornwell argues that the trial court erred by allowing testimony "on multiple occasions" indicating that Cornwell has had prior incidents of violence in relation to C.E. We disagree.

{¶27} We review a trial court's decision to admit other acts evidence for an abuse of discretion. *State v. Morris* 132 Ohio St.3d 337, 2012–Ohio–2407, syllabus. Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a

person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  "'Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove [propensity] * * *, but it does not preclude admission of that evidence for other purposes[.]'" *State v. Ross,* 9th Dist. Summit No. 26694, 2014–Ohio–2867, ¶ 51, quoting *State v. Williams,* 134 Ohio St.3d 521, 2012–Ohio–5695, ¶ 25.

{¶28}  The Supreme Court of Ohio has instructed trial courts to conduct the following three-step analysis in evaluating the admissibility of other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  Evid. R. 401.  The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams* at ¶ 20.

{¶29}  Cornwell points to five instances in the proceedings below where witnesses made reference to his violent history with C.E.  Specifically, Sergeant Bartolic testified on two separate occasions that he was familiar with Cornwell because of past instances of reported domestic violence between the couple.  C.E.'s son testified that Cornwell has hit his mother in the past and later referred to Cornwell as a "woman beater."  Lastly, the girlfriend of C.E.'s son testified that C.E. has assaulted Cornwell in the past, but only when Cornwell strikes her first.

{¶30}  However, with the exception of Sergeant Bartolic's first statement concerning Cornwell's violent past with C.E., the remaining statements were either followed by objections

that the trial court sustained or were in response to questions asked by Cornwell's attorney on cross-examination.

{¶31} With regard to the statements to which Cornwell's objections were sustained, Cornwell argues that he was still prejudiced by these statements because the trial court did not give a limiting instruction to the jury. However, Cornwell did not request any kind of limiting or curative instruction. This Court has held that, "where a party fails 'to follow up its objection with a motion * * * to strike the answer and give a curative instruction,' that party waives its right to assert the error on appeal." *Akron v. Niepsuj*, 9th Dist. Summit No. 21280, 2003-Ohio-3791, ¶ 17, quoting *Hernandez v. Rivera*, 9th Dist. Lorain No. 3855, 1985 WL 10844, * 2 (Oct. 30, 1985). "A reviewing court may not consider the admission of improper testimony, although [an] objection was sustained, where there was no motion to strike the improper testimony." *Hernandez* at * 3, citing *State v. Agner*, 30 Ohio App.2d 96, 101 (3d Dist.1972). Thus, Cornwell has forfeited this challenge to those statements for appellate review.

{¶32} With regard to those statements that were made in response to questions posed by defense counsel during cross-examination, Cornwell "'cannot, on appeal, complain that the trial court erred in permitting the admission of prejudicial testimony which was elicited from the witness [since the invited error doctrine] "prohibits a party who induces error in the trial court from taking advantage of such error on appeal."'" *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 14, quoting *State v. Jackson*, 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, ¶ 81, quoting *State v. Woodruff*, 10 Ohio App.3d 326, 327 (2d Dist.1983).

{¶33} Here, defense counsel asked C.E.'s son on cross-examination whether he had ever assaulted Cornwell prior to January 2, 2014. C.E.'s son responded that he had on about six prior occasions, but only after Cornwell first beat his mother. Defense counsel subsequently asked

C.E.'s son whether it was possible that the audible slap sound that came from behind the locked apartment door resulted from C.E. striking Cornwell. C.E.'s son responded that he doubted that was the case considering Cornwell is a "woman beater." As the testimony of C.E.'s son was in direct response to defense counsel's inquiries on cross-examination, the doctrine of invited error precludes Cornwell from challenging those prejudicial statements on appeal. *Myers* at ¶ 14.

**{¶34}** Turning to the remaining statement, Sergeant Bartolic's first reference to Cornwell's violent history, the following exchange occurred during direct examination:

Prosecutor: And at any point did you feel a forced entry [into Cornwell's apartment] was necessary?

Sergeant Bartolic: I did.

Prosecutor: And why was that?

Sergeant Bartolic: Dispatch advised that the neighbors called in for a domestic violence complaint and they identified the subjects involved which was…

Defense counsel: …object. Hearsay.

Prosecutor: Foundational, Your Honor.

Judge: Overruled.

Prosecutor: You can go on, sorry.

Sergeant Bartolic: Okay. The subjects I am familiar with from prior incidents that I personally dealt with and this incident is almost identical to when we have a domestic…

Defense counsel: …objection, Your Honor, 404(B) prior bad acts…

Prosecutor: …for purposes of identification, Your Honor.

Judge: Overruled.

**{¶35}** Even assuming that Sergeant Bartolic's testimony was improperly admitted at trial, we determine that Cornwell was not materially prejudiced by its admission. *See State v.*

*Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 33 ("[A]n appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record."). First, Sergeant Bartolic's testimony about the previous incidents was not critical at trial. His statement was a short line and did not describe in any detail the previous incidents of violence that transpired between Cornwell and C.E. Moreover, the State did not use Sergeant Bartolic's testimony to make any implications during closing argument that Cornwell is a bad person with a history of domestic violence. As such, assuming that it was erroneous for the trial court to allow such testimony, we conclude that Sergeant Bartolic's testimony was harmless.

{¶36} Second, the other evidence against Cornwell was overwhelming. The jury had the opportunity to hear from C.E., who testified that Cornwell hit her and prevented her from leaving his apartment. C.E.'s daughter, C.E.'s son, and the girlfriend of C.E.'s son all testified and corroborated C.E.'s version of events. Additionally, the State presented a photograph of C.E.'s physical injuries stemming from the altercation with Cornwell.

{¶37} In sum, even if Sergeant Bartolic's testimony should have been excluded, any error in its admission was harmless. Thus, we find no reversible error in the trial court's admission of this testimony.

{¶38} Cornwell's second assignment of error is overruled.

III.

{¶39} Cornwell's assignments of error are overruled and the judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.