[Cite as *State v. Higgins*, 2018-Ohio-476.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

TOMMY W. HIGGINS

    Appellant

C.A. No.    27700

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2014 09 2671 (A)

DECISION AND JOURNAL ENTRY

Dated: February 7, 2018

CARR, Judge.

{¶1}    Defendant-Appellant Tommy Higgins appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms but remands the matter for the issuance of a nunc pro tunc entry.

I.

{¶2}    In September 2014, Higgins was indicted on one count of possession of heroin, a fourth degree felony, one count of trafficking in heroin, a fourth degree felony, one count of aggravated trafficking in drugs (methamphetamine), a fourth degree felony, one count of aggravated possession of drugs (methamphetamine), a fifth degree felony, one count of possessing criminal tools, a fifth degree felony, and one count aggravated possession of drugs (oxycodone), a fifth degree felony. The first four counts included accompanying forfeiture specifications.

{¶3}   Initially, Higgins was represented by counsel; however, counsel was later allowed to withdraw and Higgins thereafter appeared pro se.  The matter proceeded to a jury trial.  Prior to opening statements, the indictment was amended to reflect that counts one, two, and three were fifth degree felonies; thereby rendering all counts fifth degree felonies.  In addition, the counts involving methamphetamine were amended to reflect that the drug was methadone.  After the jury had been sworn, the trial court granted Higgins' motion to unseal search warrants.  At that point, Higgins opted to be represented by counsel.  The trial court then warned Higgins that he was giving up his right to proceed pro se and that he could not "change [his] mind halfway through the trial."  Higgins agreed and his stand-by counsel took over.  The trial court allowed Higgins' counsel to have the weekend to prepare for trial.  That Monday morning, counsel for Higgins sought to file a motion to suppress to challenge the search warrants.  Based upon the desire to file a motion to suppress, Higgins' counsel moved for a mistrial and the motion was granted.

{¶4}   Repeatedly before and during the second trial, Higgins sought to waive his right to counsel and return to self-representation. The trial court denied his requests.  Following the close of evidence, counsel for Higgins renewed his Crim.R. 29 motion and the trial court granted it with respect to count three (involving aggravated trafficking in methadone).  The counts were then renumbered and the jury found Higgins guilty of the remaining counts but found that the funds at issue were not subject to forfeiture.  Higgins was sentenced and has appealed, pro se, raising six assignments of error for our review.

{¶5}   Subsequent to the filing of the notice of appeal, the trial court issued a nunc pro tunc judgment entry. The State relied on said entry in responding to one of Higgins' assignments of error.  In light of the foregoing, the Court ordered the State to supplement the record with the

entry so that the Court could determine whether it could be considered in resolving the appeal. The State timely complied with the order.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING THE CRIMINAL RULE 29 MOTION, BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PRODUCTION AT THE CLOSE OF ITS CASE-IN-CHIEF.

{¶6} Higgins argues in his first assignment of error that the trial court erred in denying his Crim.R. 29 motion. Specifically, he argues that the State failed to demonstrate that he possessed the drugs and also that the State failed to prove that he possessed the requisite amount of drugs to constitute fourth degree felonies. Further, he argues that, because the State failed to demonstrate that he possessed the requisite amount of drugs, he asserts the State also failed to demonstrate that it met its burden that he possessed criminal tools.

{¶7} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Higgins first argues that there was insufficient evidence that he possessed the drugs that were found on his wife's person. As Higgins has not challenged other elements of the offenses, we limit our analysis accordingly. The drugs found on his wife were heroin, methadone and oxycodone. With respect to those drugs, Higgins was found guilty of possessing heroin, trafficking in heroin, aggravated possession of drugs (methadone), and aggravated possession of drugs (oxycodone).

{¶9} Even prior to the search at issue in the instant matter, police had a history with Higgins. In August 2014, Officer Justin Morris of the Akron Police Department had an encounter with Higgins in front of his residence. Higgins told Officer Morris that he would "beat [Officer Morris'] a** * * * in court." Higgins also stated he was a drug dealer, drug user, and a gang leader. However, no drugs or weapons were found on Higgins at the time.

{¶10} Prior to the search involved in this case, another search was conducted at Higgins' residence. Shortly after that search, a message appeared on a Facebook page of an individual purporting to be Tommy Higgins. That message stated, "Akron police u hit u missed haha!!! That pack in and shop back open…Wit my signature stamps.." (Sic.) Detective Kandy Shoaff with the Akron Police Department Narcotics Unit interpreted that post to mean that the police had missed something when the police executed the prior search warrant.

{¶11} Detective Shoaff testified that police were investigating Higgins for heroin trafficking at his residence. Detective Shoaff collected information from a couple of sources and drug buys were conducted. Ultimately, police sought and obtained a search warrant for Higgins' residence for trafficking in heroin. That search was conducted September 3, 2014.

{¶12} Sharee Richerson was familiar with Higgins because she was dating his stepson. As of September 3, 2014, she had been staying at Higgins' house with Higgins and his wife for a couple of days. While she was there she observed several drug transactions at the house. She testified that people would come over and buy drugs and that Higgins and his wife would handle the drugs and the money. Higgins would weigh the drugs in the kitchen using a scale. To her knowledge, the only drug they sold was heroin. However, she asserted that she, Higgins, and his wife would use Percocet.

{¶13} On September 3, 2014, Higgins, Higgins' wife, Richerson, and another woman went to Walmart. Higgins' wife drove to Walmart; however, on the way back from Walmart, after they observed a police car, Higgins' wife stopped at a Taco Bell and switched places with Higgins. As they were switching places, Higgins gave drugs to his wife. Richerson observed Higgins' wife put the drugs in her pants.

{¶14} Shortly before the vehicle returned home, police stopped the car; Higgins had failed to use his turn signal and was driving under suspension. No drugs were found in the car or during a pat down search of the occupants. After the home was secured, police brought Higgins, his wife, Richerson, and the other woman back to Higgins' house.

{¶15} While in the house, Richerson attempted to spit out a bill with a white powdery substance on it without anyone noticing; however, police observed her do it and confiscated the money. Richerson thought the substance was a controlled substance, but testing did not reveal the presence of anything illegal. Richerson, who had a criminal record, including drug-related charges, entered into a plea deal with the State and pled to a misdemeanor charge of attempted possession based upon her conduct. Richerson acknowledged at trial that she expected to leave

the rehabilitation facility early based upon her testimony. She also testified that someone (other than Higgins or Higgins' wife) called her and offered her money not to testify.

{¶16} A scale that resembled a lighter was found in a kitchen cabinet. Police also conducted a strip search of the occupants of the vehicle. Prior to being searched, Higgins' wife was acting erratically; she was "sweating profusely, she was hollering, screaming, throwing herself on the ground[, and] crying." Thereafter, she told police she had a bag hidden on her person. A bag containing individual bags of heroin, methadone, and oxycodone was found in Higgins' wife's buttocks and $241 was found in her bra. No other drugs or contraband was recovered. Police arrested Higgins because they believed that the drugs were Higgins' based upon prior heroin buys involving Higgins that occurred within the house and because the police received information that it was Higgins' practice to hide drugs on his wife's person. Higgins' wife and Richerson were also arrested. Sergeant Michael Yohe of the Akron Police Department Street Narcotics Uniform Detail unit testified that it was very common for drug dealers to attempt to hide drugs if they are stopped by the police. He indicated that often male drug dealers will give females drugs to hide in their pants or bra. Sergeant Yohe testified that drug dealers are aware that oftentimes police officers are male and would not be able to fully search a woman.

{¶17} After considering the evidence presented in the State's case in a light most favorable to the State we cannot conclude that the State failed to present evidence that Higgins possessed the drugs found on Higgins' wife's person. R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "This Court has repeatedly held that a person may knowingly possess a substance or object through either actual or constructive possession. Constructive possession

exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." (Internal quotations and citations omitted.) *State v. Rowe*, 9th Dist. Summit No. 27870, 2016-Ohio-5395, ¶ 9. "Additionally, [p]ossession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." (Internal quotations and citation omitted.) *Id.*

{¶18} Here, the State presented evidence that when Higgins and his wife traded places at the Taco Bell, Higgins handed his wife drugs which she put in her pants. Heroin, methadone, and oxycodone were later recovered from Higgins' wife's buttocks during a strip search. Prior to the search, police had received information that it was Higgins' practice to have his wife hide drugs on her person. There was also testimony that Higgins and his wife sold heroin out of their home on several occasions during the few days prior to their arrest. Richerson testified that both Higgins and his wife handled the drugs and that Higgins weighed the drugs on a scale in the kitchen.

{¶19} Given the foregoing, we cannot say that the trial court erred in denying Higgins' Crim.R. 29 motion. Viewing the evidence in a light most favorable to the State, the State presented sufficient evidence that Higgins possessed the drugs found on his wife's person.

{¶20} With respect to Higgins' argument that the State failed to demonstrate that the amount of the drugs for the possession and trafficking in heroin counts was sufficient to qualify as fourth degree felonies we note that the indictment was orally amended prior to trial to reflect that the counts were fifth degree felonies. The offenses of trafficking and possession of heroin as fifth degree felonies do not contain an element requiring the State to demonstrate a particular amount of heroin was recovered. *See* R.C. 2925.03(C)(6) and 2925.11(C)(6). Moreover, at

sentencing, the trial court noted that all the counts were fifth degree felonies and sentenced within the range provided by R.C. 2929.14. *See* R.C. 2929.14(A)(5). Accordingly, Higgins' argument is without merit.

**{¶21}** However, notwithstanding the foregoing, the judgment entry does contain a clerical error as it reflects that counts one and two were fourth degree felonies even though the trial court correctly recited at the sentencing hearing that they were fifth degree felonies. Because it is clear from the record that such is only a clerical error, we remand the matter for the trial court to issue a nunc pro tunc entry to reflect that Higgins was found guilty of fifth degree felonies with respect to counts one and two and that the sentence imposed for count two was for a fifth degree felony as well.[1] *See State v. Kilmire*, 9th Dist. Summit Nos. 27319, 27320, 2015-Ohio-665, ¶ 19.

**{¶22}** As to Higgins' argument with respect to possessing criminal tools, we question whether Higgins properly preserved this argument for review as it does not appear that this count was addressed during the Crim.R. 29 motion. *See State v. Thornton*, 9th Dist. Summit No. 23417, 2007-Ohio-3743, ¶ 13. And while Higgins has undoubtedly preserved a general sufficiency challenged based on this same issue, *see id.*, he has limited his argument on appeal to the denial of his Crim.R. 29 motion.

**{¶23}** However, even if we were to address the merits of Higgins' argument, we would overrule it. He maintains that the State had to prove that he possessed the scale with the intent to use it in the commission of a felony offense. *See* R.C. 2923.24(C). Specifically, he argues that "without sufficient evidence to find Mr. Higgins guilty as charged of committing fourth degree

---

[1] Higgins was not sentenced on count one as the trial court determined counts one and two were allied and the State elected to have Higgins sentenced on count two.

drug possession and trafficking, the State implicitly failed to meet its burden of production as it applied to his charge of possessing criminal tools."

**{¶24}** This count related to a scale that was found in Higgins' house. There was testimony that the scale resembled a lighter and was found in a kitchen cabinet. Richerson testified that Higgins sold heroin, that she observed several drug transactions while she was staying at Higgins' home, that he used a scale to weigh the drugs, and that he would weigh the drugs in the kitchen. Under the circumstances, which include that the jury found Higgins guilty of four fifth degree felony drug-related offenses, we fail to see how the State failed to prove that Higgins intended to use the scale in the commission of a felony offense. *See* R.C. 2923.24(C); R.C. 2925.11(C)(6) (categorizing possession of heroin as a felony); R.C. 2925.03(C)(6) (categorizing trafficking in heroin as a felony).

**{¶25}** Higgins' first assignment of error is overruled; however, the trial court is ordered to issue a nunc pro tunc entry to correct the clerical errors identified above.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT MISSTATED ITS JURY CHARGE BY OMITTING THE WORD "TOGETHER" FROM THE OHIO JURY INSTRUCTION ARCHIVE 409.50.

**{¶26}** Higgins argues in his second assignment of error that the trial court committed plain error in omitting the word together from the jury instruction on joint possession.

**{¶27}** Because Higgins did not object to the trial court's joint possession instruction, he has forfeited all but plain error. *State v. Yuschak*, 9th Dist. Medina No. 15CA0055-M, 2016-Ohio-8507, ¶ 57. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To constitute plain error, the error must be obvious and have a substantial adverse impact on both

the integrity of, and the public's confidence in, the judicial proceedings. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice." (Internal citations omitted.) *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 29. "This Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of trial clearly would have been different but for the alleged error." *Id.*

{¶28} Here, the trial court instructed the jury that "[j]oint possession exists when two or more persons have the ability to control an object exclusive of others." Higgins argues that the trial court should have instructed the jury that "[t]wo or more person may have possession if *together* they have the ability to control it, exclusive of others." (Emphasis sic.) *See also Ohio Jury Instructions*, CR Section 417.21(4) (2017). He argues that the absence of the word together from the trial court's instructions amounts to plain error.

{¶29} While Higgins makes a conclusory assertion that the omission of the word together probably misled the jury, he has not explained why that would be the case. Further, Higgins has not argued, let alone demonstrated, that the result of his trial would have been different had the trial court included the word together in the instruction. *See* App.R. 16(A)(7); *see also Klingel* at ¶ 29. We note there was evidence that Higgins gave the drugs to his wife to hide, which, when considered with the other circumstances, allows for the reasonable inference that Higgins possessed the drugs.

{¶30} Higgins' second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S FAILURE TO INQUIRE INTO MR. HIGGINS' REQUEST FOR SELF-REPRESENTATION PRIOR TO THE SECOND TRIAL DENIED MR. HIGGINS A FAIR TRIAL AND DENIED HIM DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE

U.S. CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶31} Higgins argues in his third assignment of error that the trial court failed to inquire into his request for self-representation prior to, and during, the second trial.

{¶32} "The Sixth Amendment guarantees that a criminal defendant has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." (Internal quotations and citations omitted.) *State v. Eggeman,* 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-5177, ¶ 34. "Significantly, however, the right to self-representation occupies no hallowed status similar to the right to counsel enshrined in the Sixth Amendment. While the right to counsel attaches unless affirmatively waived, the right to self-representation does not attach until asserted." (Internal quotations and citation omitted.) *State v. Perry,* 9th Dist. Summit No. 25271, 2011-Ohio-2242, ¶ 11. Given the important benefits afforded by the right to counsel, "courts [must] indulge in every reasonable presumption against waiver of the right to counsel" and "a strict standard must be applied when determining the adequacy of a criminal defendant's invocation of the right to self-representation." (Internal quotations and citations omitted.) *Id.* "A defendant may not invoke the * * * right if the * * * demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." (Internal quotations and citation omitted.) *Id.* at ¶ 11. Accordingly, "[a] request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process." *State v. Dean,* 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 68. The Supreme Court has noted that a request is not unequivocal if it is made as an expression of frustration, *see State v. Neyland,* 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 73, and has found a request to be untimely if made three days before trial. *See id.* at ¶ 76. Nonetheless, "[i]f a trial court denies

the right to self-representation when the right has been properly invoked, the denial is per se reversible error." (Internal quotations and citations omitted.) *Eggeman* at ¶ 34.

{¶33} Prior to the first trial, Higgins was initially represented by counsel. However, he also began to file motions pro se. In one of those motions, Higgins sought to be made co-counsel with his attorney, yet he also claimed to not be indigent and sought to retain counsel. At a pretrial hearing, the trial court addressed these motions and pointed out to Higgins that, if he was represented by counsel, the trial court could not address his pro se filings. When the court questioned Higgins about whether he was indigent, he initially declined to answer the question and then responded that he was not. When appointed counsel then moved to withdraw based on Higgins not being indigent, Higgins then asserted that he was indigent. The court ultimately allowed trial counsel to withdraw and informed Higgins that he could hire his own attorney. At that point, Higgins indicated he wanted to represent himself.

{¶34} Higgins continued to represent himself at additional hearings, however, stand-by counsel was also appointed to assist him if need be. While Higgins objected to the presence of stand-by counsel, the trial court declined to remove him. The matter proceeded to the first trial. Prior to jury selection, the trial court informed Higgins that:

> [I]f you choose to ask your stand-by counsel to speak for you, in other words, you decide it's too much for you and you're overwhelmed and you want him to start talking for you because you're frustrated about the way things are going, then that's fine.

> But once he starts speaking for you, you've relinquished your right to proceed pro se and [the trial court] would then activate [stand-by counsel] as your counsel of record and you would not be permitted at that point to speak any more in court except as a witness if you're testifying. You understand?

{¶35} Higgins responded affirmatively. A jury was then selected and sworn. Prior to opening statements, the trial court granted Higgins' motion to unseal certain search warrants. At

that point, Higgins opted to have stand-by counsel represent him and the following exchange took place:

[Higgins]: I would like to proceed with [stand-by counsel] on the case.

[Trial court]: You want to turn it over to [stand-by counsel] now?

[Higgins]: Yeah.

[Trial court]: Okay. You understand that means you're not going to be able to argue your own motions anymore, you're not going to be able to speak? * * *

[Higgins]: You got it.

[Trial court]: You understand?

[Higgins]: Yeah.

[Trial court]: Okay. You can't change your mind halfway through the trial.

[Higgins]: I'm not.

[Trial court]: Okay. So you are now relinquishing your right to proceed pro se and you're asking stand-by counsel * * * to take over from here on out?

[Higgins]: Correct.

{¶36} The trial court then allowed Higgins' counsel to have the weekend to prepare for trial. That Monday morning, counsel for Higgins sought to file a motion to suppress to challenge the search warrants. Based upon the desire to file a motion to suppress, Higgins' counsel moved for a mistrial and the motion was granted.

{¶37} Weeks later, prior to the second trial, Higgins again began to file pro se motions. At a pretrial hearing, the trial court again explained to Higgins that, as he was represented by counsel, only counsel could file motions. The trial court also asked Higgins whether he remembered asking that counsel represent him and Higgins responded affirmatively. Higgins then expressed disagreement with the way in which counsel was handling the matter and

requested to waive counsel. The trial court denied his motion and later reminded Higgins that it was his decision to allow stand-by counsel to represent him.

{¶38} Prior to jury selection in the second trial, Higgins asserted that the trial court denied him the right to self-representation. The trial court again asked him whether he remembered agreeing to have stand-by counsel represent him. This time, Higgins stated that he could not recall asking for stand-by counsel to represent him. The trial court then told Higgins that they were no longer going to have conversations about the issue if Higgins was going to lie to the court.

{¶39} During trial Higgins again raised the issue of self-representation on multiple occasions. At one point, the trial court told Higgins that he had already made his choice to be represented by counsel after initially appearing pro se and that that the court was not going to revisit the issue.

{¶40} Finally, following the verdict and prior to sentencing, Higgins told the trial court that he "wanted to represent [him]self in the whole trial, period, and [he] was just denied that." The trial court responded that it would "just note for the record, as it has numerous times before, that Mr. Higgins has kind of gone back and forth on the issue of whether he wanted to represent himself to the point where the court felt he was playing games and attempting to manipulate * * * and delay this process." The trial court then informed Higgins that it did allow Higgins to represent himself and they had begun a previous trial. The trial court reminded Higgins that "[a]t the conclusion of jury selection [he] changed [his] mind based on some issues that arose in discovery and asked the Court to appoint [stand-by] counsel." The trial court indicated that it had "told [Higgins] then that [they] would not be going back to any other situation regarding [his] pro se status at that point."

{¶41} After considering the totality of the circumstances, we cannot say that the trial court erred in denying Higgins' requests to represent himself made immediately before and during the second trial. Higgins made those requests to appear pro se after he had previously appeared pro se and then relinquished that right when faced with a situation he felt he could not handle. Higgins was informed at that time that he would not be able to return to pro se representation. It would not be unreasonable for the trial court to conclude that if Higgins again represented himself pro se, additional situations would arise that would cause Higgins to seek representation, which would in turn only further delay the trial. As noted above, "[a] defendant may not invoke the * * * right if the * * * demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." (Internal quotations and citations omitted.) *Perry,* 2011-Ohio-2242, at ¶ 11.

{¶42} Higgins' third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED A POLICE OFFICER TO TESTIFY OVER OBJECTION ABOUT ALLEGED CONFESSIONS OF OTHER CRIMES FROM PREVIOUS INTERACTIONS WITH MR. HIGGINS.

{¶43} Higgins argues in his fourth assignment of error that the trial court erred in allowing certain other acts testimony over objection. Specifically, Higgins challenges Officer Morris' testimony that Higgins said he would "beat [Officer Morris'] a** * * * in court" and that Higgins admitted to Officer Morris that Higgins was a drug dealer, drug user, and a gang leader.

{¶44} This Court reviews a trial court's decision to admit other acts for an abuse of discretion. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. Evid.R. 404(B) provides in part that evidence of other crimes, wrong or acts "may * * * be admissible for other

16

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The State argued at trial, and on appeal, that the testimony was admitted, inter alia, to demonstrate Higgins' intent to sell drugs. Prior to the officer's testimony, the trial court gave a limiting instruction to the jury. A limiting instruction was also repeated during the jury instructions.

{¶45} Higgins has only made a very limited argument on appeal. *See* App.R. 16(A)(7). He has not explained why the testimony was inadmissible for the limited purpose of demonstrating intent. *See State v. Cornwell,* 9th Dist. Wayne No. 14AP0017, 2015-Ohio-4617, ¶ 28, quoting *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20 (discussing the three-step analysis trial courts should conduct in evaluating the admissibility of other acts evidence). Further, even if we were to determine that the evidence was inadmissible, we can only conclude that, in light of the other evidence presented, which included testimony from Richerson that she observed Higgins selling drugs, and the limiting instruction provided to the jury, any error in its admission was harmless. *See State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 33 ("[I]n determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.").

{¶46} Higgins' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT'S SENTENCING ENTRY IS VOID AS A MATTER OF LAW BECAUSE IT IMPOSES A SEVEN-YEAR SENTENCE AFTER ADDING A  TWO-YEAR SENTENCE TO A FOUR-YEAR SENTENCE FROM A PRIOR CASE.

**{¶47}** Higgins argues in his fifth assignment of error that his sentence is void essentially for what he believes is a mathematical error on the part of the trial court. While there is a typographical error in the trial court's February 10, 2015 judgment entry, we conclude that such can be corrected in the nunc pro tunc entry that is already necessitated by this Court's resolution of Higgins' first assignment of error.

**{¶48}** "In reviewing a felony sentence, [t]he appellate court's standard for review is not whether the sentencing court abused its discretion." (Internal quotations omitted.) *State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 44, quoting *State v. Howard*, 9th Dist. Lorain No. 15CA010857, 2016-Ohio-7077, ¶ 5, quoting R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law." (Internal quotations omitted.) *Boatright* at ¶ 44, quoting *Howard* at ¶ 5, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. "Clear and convincing evidence is that which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations and citations omitted.) *Boatright* at ¶ 44, quoting *Howard* at ¶ 5.

**{¶49}** The trial court, in its February 10, 2015 judgment entry, ordered that Higgins' sentence in the instant matter be served consecutively to his sentence in another case, for a total of seven years. However, Higgins points out that that that sentencing entry also provides that Higgins aggregate sentence in the instant matter was only two years. Accordingly, he argues that his total sentence should be six years, as his sentence in the other case was a suspended sentence of four years.

{¶50} First, this Court notes that, to the extent the trial court commented on the length of Higgins' sentence in another case, aside from ordering the sentence in the instant matter to run consecutively to the sentence in the other case, such comment had no effect, irrespective of whether that commentary was correct or incorrect. Moreover, the only matter before this Court is the propriety of the sentence in the instant case. In reviewing the sentencing transcript, it is clear that the trial court sentenced Higgins to an aggregate term of three years in this case. The trial court sentenced Higgins to one-year terms on each of four counts. The trial court then ordered that counts three and five run concurrently to each other and that counts two and four run consecutively to each other and consecutively to counts three and five.

{¶51} Unfortunately, the February 10, 2015 sentencing entry states that the sentences imposed in counts two and four shall be served consecutively with each other but concurrently with the sentences in counts three and five and that the sentences in counts three and five shall be served concurrently with each other. Thus, the February 10, 2015 entry provides for an aggregate term of two years in the instant case. Such error is clearly a clerical error which would not render the sentence contrary to law. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30 (stating that a trial court's failure to incorporate the findings it properly made at a sentencing hearing into a judgment entry did not render the sentence contrary to law, but instead, was a clerical error).

{¶52} The March 5, 2015 judgment entry, which the Court supplemented the record with, purports to be a nunc pro tunc entry. That entry correctly recites the sentence imposed at the sentencing hearing: an aggregate term of three years.[2] We note that this Court has in the past

---

[2] Additionally, the entry omits any reference to the length of Higgins' sentence in the other case.

questioned whether a trial court retains jurisdiction to issue a nunc pro tunc entry while an appeal is pending. *See State v. Kirby*, 9th Dist. Summit No. 27060, 2014-Ohio-5643, ¶ 35, fn. 5. Here, because the trial court is required to issue a nunc pro tunc entry pursuant to this Court's resolution of Higgins' first assignment of error, we see no need to resolve that issue in this appeal. The trial court is ordered to include the correction it included in the March 5, 2015 entry in the forthcoming entry. *See Bonnell* at ¶ 30 ("[A] clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.")

{¶53} In light of Higgins' limited argument, Higgins has not demonstrated that his sentence is void or contrary to law. Higgins' fifth assignment of error is overruled but the matter is remanded for the issuance of a nunc pro tunc entry.

## ASSIGNMENT OF ERROR VI

MR. HIGGINS WAS NOT AFFORDED A FAIR TRIAL AND A RIGHT TO EFFECTIVE COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.

{¶54} Higgins argues in his sixth assignment of error that he was denied effective assistance of trial counsel because his trial counsel failed to subpoena a witness.

{¶55} In order to prevail on a claim of ineffective assistance of counsel, Higgins must show that his "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Higgins must show that counsel's performance was objectively deficient by producing evidence

that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Higgins must demonstrate that but for counsel's errors, there is a reasonable probability that the results of his trial would have been different. *Keith* at 534.

{¶56} Prior to the mistrial, the State informed Higgins' counsel that, the day prior, the State located and spoke to the fourth passenger in the vehicle. The State indicated that that witness told the State that "she was texting the entire time and she didn't see any drug activity in the car." That witness did not testify at the second trial. Prior to the conclusion of the second trial, Higgins' counsel requested a continuance to subpoena that witness based upon what Higgins was then reporting to his counsel. Higgins' counsel stated that he was told that the witness "had given statements through jail calls that maybe would have helped his defense[ and that he] had not known about her testimony before [that day]." Higgins also told the court that it was based upon what the State previously stated on the record. The trial court declined to grant a continuance.

{¶57} We cannot say that Higgins' counsel was ineffective for failing to subpoena the witness. We note that, "generally speaking, the decision to call, or not call, witnesses falls within the purview of trial strategy." *State v. Ball,* 9th Dist. Summit No. 26537, 2013-Ohio-3506, ¶ 41. Even assuming that the witness would have testified consistent with the statement, Higgins cannot demonstrate that her testimony would support his defense. At best, the statement indicates that the witness was not paying attention to what was occurring around her and, thus, could not say one way or another whether Higgins handed his wife the drugs. To the extent that the witness would have added anything additional to the statement, or to the extent that the alleged jail calls contained additional information, such is purely speculative. *See State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 77 ("[S]peculation regarding the

prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.") (Internal quotations and citations omitted.). The substance of those calls is not in our record and thus Higgins cannot establish he was prejudiced by his counsel's failure to subpoena the witness. *See id.*

**{¶58}** Higgins' sixth assignment of error is overruled.

III.

**{¶59}** Higgins' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed; however, the matter is remanded for the trial court to correct the clerical errors outlined above via a nunc pro tunc entry.

Judgment affirmed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

TOMMY W. HIGGINS, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.